WILLIAM GROTE *v.* THE A. C. HINE COMPANY

BALDWIN, C. J., KING, MURPHY, MELLITZ and BORDON, Js.

Argued March 10—decided April 11, 1961

*H. Martyn Owen, Jr.,* for the appellant (defendant).

*Edward J. Daly, Jr.,* for the appellee (plaintiff).

BORDON, J. The plaintiff in this action seeks an injunction and damages for breach of contract by the defendant. The trial court rendered judgment awarding damages to the plaintiff, and the defendant has appealed.

The finding, which is not subject to correction, discloses the following facts: On October 9, 1959, the parties signed a contract whereby the plaintiff agreed to purchase a new 1960 Pontiac car from the defendant. The contract set forth the price of the Pontiac and provided for payment as follows: ". . . of which amount I [the plaintiff] have deposited herewith the sum of $100 and have and do hereby sell, assign and convey unto . . . The A. C. Hine Company, One (1) 1956 Ford conv. Blue . . . at the agreed price of $1,313.38. . . ." The balance of the purchase price was to be paid in cash upon delivery of the Pontiac. No date for the delivery of the new car was provided for in the contract, but the parties expected that delivery would be made in four to six weeks. Because of the nature of his employment, the plaintiff needed a car. He expected to continue to drive the Ford until the new car was delivered to him, but this expectation was not communicated by him to the defendant and did not con-

stitute any inducement to the plaintiff to enter into the contract. Neither at the time the contract was signed nor before was there any discussion between the parties about permitting the plaintiff to use the Ford. That car had been in an accident a few weeks earlier and required body repairs. After the contract was signed, the parties entered into an independent arrangement which permitted the plaintiff to use the Ford until the defendant's body shop needed work; then the plaintiff would take the Ford to the defendant, which would thereupon loan the plaintiff another car for his use pending the arrival of the new car. While using the Ford, the plaintiff experienced mechanical difficulties with it and took it to the defendant. The defendant repaired it at a cost of $214.57. The plaintiff refused to pay the repair bill, and the defendant attempted to add it to the balance due on the Pontiac. Upon arrival of the Pontiac, the plaintiff offered the balance of the agreed purchase price; this was refused by the defendant unless the repair bill of $214.57 was paid by the plaintiff. The defendant attempted to break the contract and return the cash deposit, but this was refused by the plaintiff. Pending delivery of the new car, the defendant, on four different occasions, loaned the plaintiff a car for his use from its stock of used cars.

The trial court concluded that the written contract of October 9, 1959, constituted the entire contract between the parties relative to the purchase of the Pontiac and the transfer of the Ford to the defendant; that the arrangement for the use of the Ford was made subsequently to, and was entirely separate and distinct from, the written contract and was not intended as a modification of it; that the plaintiff did not authorize the repairs to the Ford;

and that the defendant broke the written contract, entitling the plaintiff to recover the amount the defendant had agreed to pay for the Ford.

The defendant claims that the arrangement permitting the plaintiff to use the Ford constituted a modification of the written contract. The defendant concedes in its brief that the contract language providing for the immediate transfer of title to the Ford is unequivocal; it does not dispute the meaning or legal effect of that language. See 2 Williston, Sales (Rev. Ed.) § 259. It claims, however, that the parties modified the contract after its execution, so that the transfer of title to the Ford was not to take place until delivery of the Pontiac. See Restatement, 1 Contracts § 274. A written contract can be modified by a subsequent parol agreement if that is the intention of the parties. *Blakeslee* v. *Water Commissioners,* 121 Conn. 163, 182, 183 A. 887; *Baier* v. *Smith,* 120 Conn. 568, 571, 181 A. 618. The intention of the parties to a contract is to be determined from the language used, interpreted in the light of the situation of the parties and the circumstances connected with the transaction. *Ives* v. *Willimantic,* 121 Conn. 408, 411, 185 A. 427; *Patzloff* v. *Kasperovich,* 116 Conn. 440, 441, 165 A. 349; *New Britain Real Estate & Title Co.* v. *Hartford Acceptance Corporation,* 112 Conn. 613, 615, 153 A. 658. The trial court found, however, that the arrangement for the use of the Ford by the plaintiff was not a modification of the contract. The defendant seeks to substitute for that conclusion one to the effect that the understanding of the parties following the execution of the written contract constituted a modification of its terms. Under the circumstances of this case, the intent of the parties in entering into the subsequent arrangement for the

use of the Ford presented a question of fact for the trier. *Franke* v. *Franke,* 140 Conn. 133, 139, 98 A.2d 804; *Kriedel* v. *Krampitz,* 137 Conn. 532, 534, 79 A.2d 181; *Bond Rubber Corporation* v. *Oates Bros., Inc.,* 136 Conn. 248, 251, 70 A.2d 115. It is the privilege of the trier to adopt whatever testimony he reasonably believes to be credible. *Greenberg* v. *Electric Boat Co.,* 142 Conn. 404, 408, 114 A.2d 850; *Clark* v. *Haggard,* 141 Conn. 668, 674, 109 A.2d 358; *Morgan* v. *Hill,* 139 Conn. 159, 161, 90 A.2d 641; see *Garofalo* v. *Argraves,* 147 Conn. 685, 688, 166 A.2d 158. The trial court's conclusion that the parties by their subsequent arrangement concerning the use of the Ford did not intend to modify the written contract is legally and logically supported by the facts found.

The defendant further claims that it could not have agreed to loan the Ford to the plaintiff because such an agreement would have been in violation of § 14-60 of the General Statutes, as amended by Public Acts 1959, No. 499, which forbids the loan of a car by a dealer except under certain conditions and for not more than five days. In this case, the loan was to terminate when the body shop needed work. The defendant could have terminated the loan of the Ford on demand, within five days. By so doing, it would have avoided the penalties of the statute if the conditions specified in it were otherwise satisfied. Furthermore, the fact that the loan was in violation of the statute would not preclude the finding that such a loan was in fact made.

There is no error.

In this opinion the other judges concurred.