## FRANK E. HESS *v.* DUMOUCHEL PAPER COMPANY

KING, C. J., ALCORN, HOUSE, COTTER and RYAN, Js.

Argued October 6—decided December 21, 1966

*William J. Larkin 2d,* with whom, on the brief, was *Walter M. Pickett, Jr.,* for the appellant (defendant).

*Emmet P. Nichols,* with whom, on the brief, was *Jeremiah M. Keefe,* for the appellee (plaintiff).

COTTER, J.  The plaintiff brought this action in three counts to recover rent for premises leased by

him to the defendant. In its answer, the defendant denied liability for rent and, by way of special defense, alleged that prior arrangements or leases between the parties were canceled by later oral leases or agreements and by "the imminent condemnation of said premises by the Highway Department." The court found the issues for the plaintiff and awarded damages in the amount of $5800 for the unpaid rent.

The pertinent facts properly found by the trial court are as follows: The defendant corporation, engaged in the wholesale and retail paper business, and the plaintiff, the owner of a three-story warehouse in Waterbury, entered into a written lease, dated December 28, 1946, of a portion of the space located in the plaintiff's building. This lease provided for a monthly rental of $250 for a period of three and one-half years beginning January 1, 1947. Subsequently, on October 3, 1949, the parties entered into another written agreement modifying this lease. In this supplementary agreement, the parties consented to be bound by all the terms of the original lease for three years from the date a registered notice was mailed by either party indicating a desire to terminate or change the lease. Thereafter, in 1956, 1957 and 1959, three separate oral agreements were made by the parties for additional space to be occupied by the defendant, and, after negotiations, an agreed amount on each occasion was arrived at for the rental to be paid for each additional space. The defendant, in the fall of 1959, aware that the state highway department proposed to construct an interstate highway which would require the taking of this property, and fearing that the plaintiff's building would be condemned, looked for other quarters in which to carry on its

business. It purchased a building for that purpose on December 8, 1959, after notifying the plaintiff that it would vacate the premises on January 30, 1960. Rent was paid to January 31, 1960, when the defendant vacated the premises. Thereafter, the plaintiff rented portions of the vacated premises and received $2700 in rental from the new tenants. The state eventually filed a certificate of condemnation of the plaintiff's building on December 28, 1962. The court concluded that the agreement of December 28, 1946, as amended on October 3, 1949, was in full force and effect on December 1, 1959, and that the oral agreements entered into by the parties for additional space were separate and independent contracts which provided for tenancies from month to month. The trial court also concluded that the probability of taking the property by eminent domain did not relieve the defendant of the obligation to give the plaintiff a three-year notice of intention to terminate the written lease, and it awarded damages based on a rental of $250 a month for a period of thirty-four months less a credit of $2700 for rent received from subsequent tenants. The defendant has taken an appeal from the resulting judgment.

The substance of the defendant's first claim is that the court erred in failing to conclude that the subsequent oral agreements constituted a remaking of the original written agreement and that the new agreement created a month-to-month tenancy of all the premises occupied by the defendant.

The written agreement of October 3, 1949, was an extension of the original lease and modified it to the extent already stated above. *Didriksen* v. *Havens,* 136 Conn. 41, 45, 68 A.2d 163. The contractual relationship between the parties establishes the

liability for rent. *Chapel-High Corporation* v. *Cavallaro,* 141 Conn. 407, 412, 106 A.2d 720. It is fundamental that a written lease may be supplemented by a later oral one. *Baier* v. *Smith,* 120 Conn. 568, 571, 181 A. 618; *Bartlett* v. *Stanchfield,* 148 Mass. 394, 395, 19 N.E. 549. Whether the three later oral agreements took the place of any previous arrangements between the parties, as claimed by the defendant, may present an issue of fact or law depending on the circumstances of the case. *Smith* v. *Miller,* 79 Conn. 624, 626, 66 A. 172. Under the situation before the court, confronted with oral undertakings, it was a matter of determining what took place when the oral agreements were entered into. The only evidence on this score consisted of the conduct and testimony of the principals involved. The intention of the parties manifested by their words and acts is essential to determine whether a contract was entered into and what its terms were. *Nutmeg State Machine Corporation* v. *Shuford,* 129 Conn. 659, 661, 30 A.2d 911. This determination requires a finding of mutuality of obligation. *R. F. Baker Co.* v. *P. Ballantine & Sons,* 127 Conn. 680, 683, 20 A.2d 82. The parties may validly agree to substitute or materially change a contract, but, as required in originally making it, mutual assent to its meaning and conditions is necessary. *Yale Co-operative Corporation* v. *Rogin,* 133 Conn. 563, 568, 569, 53 A.2d 383. They must assent to the same thing in the same sense; *Hoffman* v. *Fidelity & Casualty Co.,* 125 Conn. 440, 443, 6 A.2d 357; *Farago* v. *Burke,* 262 N.Y. 229, 232, 186 N.E. 683; if they are to vary the contract in any way after it has been executed. *Whiteside* v. *United States,* 93 U.S. 247, 255, 23 L. Ed. 882; see 17 Am. Jur. 2d 935 n.11, Contracts, § 465.

Since the subsequent agreements for additional space were not reduced to writing, evidence as to their legal meaning must be found in the circumstances surrounding their making. *Sturtevant* v. *Sturtevant,* 146 Conn. 644, 647, 153 A.2d 828; *Amalgamated Assn.* v. *Connecticut Co.,* 142 Conn. 186, 192, 112 A.2d 50. The parties agree they amounted to month-to-month leases. That they were substituted for the original agreement is denied by the plaintiff. The meagre evidence on this point included the testimony of Francis G. Martin, treasurer and general manager of the defendant, that, when the amount of the increased rental for the additional space was negotiated, there was no discussion about any modification of the original agreement and that Martin himself, who negotiated these oral arrangements on behalf of the defendant, did not at that time know about the written agreement. It is the defendant's claim that the parties treated the lease as a totality because one check was given for the whole space without regard to the particular areas, and consequently the conditions of the original lease did not remain the same.

Separate dealings among the parties cannot affect another transaction so as to constitute a substituted contract between them unless it was their intention that such an agreeement be consummated. This intention can be determined from the language used and the circumstances known to both parties under which the negotiations were had. The contract must be read in the light of the whole relationship between the parties. There must be an expression of mutual assent necessary to form a contract. The contractual relationship must be shown by some intelligible conduct, acts and words and not from an unexpressed intention. The trier must consider

their words, acts or conduct so far as they evince the intention of the parties to the contract. What meaning is to be given to the later oral arrangements depends on the intention of the parties, which must be determined by the trier from all the evidence. "Intention is an inference of fact, and the conclusion is not reviewable unless it was one which the trier could not reasonably make." *Finlay* v. *Swirsky,* 98 Conn. 666, 671, 120 A. 561; *Grote* v. *A. C. Hine Co.,* 148 Conn. 283, 286, 170 A.2d 138; *Stern & Co.* v. *International Harvester Co.,* 148 Conn. 527, 532, 172 A.2d 614; 1 Williston, Contracts (3d Ed.) §§ 20, 22. It is axiomatic that the trier may accept whatever evidence it reasonably finds credible. *Jarrett* v. *Jarrett,* 151 Conn. 180, 181, 195 A.2d 430; *State* v. *Hodge,* 153 Conn. 564, 572, 219 A.2d 367. While the written contract may be varied by a subsequent oral contract, the burden of proof is on the party who sets up an oral change in the written agreement. *Teal* v. *Bilby,* 123 U.S. 572, 578, 8 S. Ct. 239, 31 L. Ed. 263. The trial court was justified, under the evidence presented, in concluding that the subsequent oral contracts were distinct and separate transactions which did not affect the earlier written agreement.

The substance of the defendant's other claim of error is that it was excused from its obligation under the doctrine of impossibility of performance or, alternatively, under the doctrine of frustration of purpose. Although related in terms of their ultimate objective, each of these two principles is based on its own separate and distinct rationale. Under the early theory of impossibility of performance arising subsequent to the making of a contract, it has been stated that "in ascertaining the rights of the parties the lease should be treated

solely as a contract . . . and the general rule is that where parties, by their own contract and positive undertaking, create a duty or charge upon themselves, they must abide by the contract and make the promise good, and subsequent contingencies, not provided against in the contract, which render performance impossible, do not bring the contract to an end." *Leonard* v. *Autocar Sales & Service Co.*, 392 Ill. 182, 186, 187, 64 N.E.2d 477, cert. denied, 327 U.S. 804, 66 S. Ct. 968, 90 L. Ed. 1029, rehearing denied, 328 U.S. 878, 66 S. Ct. 1118, 90 L. Ed. 1646, rehearing denied, 328 U.S. 879, 66 S. Ct. 1339, 90 L. Ed. 1647. Many exceptions and qualifications arose in the specific use of this general rule to relieve the harshness in its strict application. See 17 Am. Jur. 2d 852, Contracts, § 404; 17A C.J.S., Contracts, § 463(1). The earlier cases allowing exceptions to the strict common-law rule were often justified by reference to a set of implied conditions which the court found to have existed at the time of the execution of the agreement. See *Anderson* v. *Yaworski,* 120 Conn. 390, 396, 181 A. 205; *Straus* v. *Kazemekas,* 100 Conn. 581, 590, 124 A. 234. It is clear, however, that the modern approach to the doctrine has shed its reliance on this conceptualization. 6 Corbin, Contracts § 1331; Restatement, 2 Contracts § 457; see *City of Vernon* v. *Los Angeles,* 45 Cal. 2d 710, 720, 290 P.2d 841; *Fisher* v. *United States Fidelity & Guaranty Co.,* 313 Ill. App. 66, 72, 39 N.E.2d 67; *Crown Ice Machine Leasing Co.* v. *Sam Senter Farms, Inc.,* 174 So. 2d 614, 617 (Fla.); note, 84 A.L.R.2d 12, 50 § 9.

The doctrine of frustration of purpose, which has more modern origins, excuses a promisor in certain situations where the objectives of the contract have been utterly defeated by circumstances arising after

the formation of the agreement. *Lloyd* v. *Murphy,* 25 Cal. 2d 48, 153 P.2d 47; *Perry* v. *Champlain Oil Co.,* 101 N.H. 97, 134 A.2d 65; *Crown Ice Machine Leasing Co.* v. *Sam Senter Farms, Inc.,* supra; 6 Corbin, Contracts §§ 1322, 1325, 1353; 6 Williston, Contracts (Rev. Ed.) § 1935. Excuse is allowed under this rule even though there is no impediment to actual performance. Neither the doctrine of frustration of purpose nor the doctrine of impossibility of performance can be successfully applied to the facts of this case.

It is clear that there was no actual impossibility of performance by the defendant of the part of the agreement which is the subject of this suit. Rather than retaining possession of its tenancy, however, the defendant elected to purchase its own warehouse facility and breach its agreement with the plaintiff. This decision was a calculated business choice. If it wished to protect its future position, the defendant could have attempted to find short-term tenants for its own warehouse, while at the same time performing its contract with the plaintiff. Fulfilment of its agreement, although leading to some uncertainties, would have been neither impossible nor extremely onerous.

It is also apparent that the defendant's purpose in making the contract was not frustrated by the impending condemnation. The purpose of the agreement, from the defendant's point of view, was to provide storage space for its inventory. This purpose survived the announcement of the highway construction plans, as evidenced by the defendant's purchase of its own warehouse. At the time of the actual taking, of course, the objective of the contract would have become frustrated, and performance by the plaintiff rendered impossible, but this

suit involves only the period prior to condemnation, during which the agreement could have been purposefully and satisfactorily performed on both sides. Under the facts of this case, therefore, there could have been no excuse of the defendant's breach on the ground of frustration of purpose. The court acted correctly in rejecting this claim and in concluding that the imminence of condemnation did not operate to cancel the written lease.

There is no error.

In this opinion the other judges concurred.