GENERAL ELECTRIC SUPPLY CO. *v.* SOUTHERN NEW ENGLAND TELEPHONE CO. ET AL.

PETERS, WRIGHT, DALY, BRENNAN and F. HENNESSY, Js.

Argued November 3—decision released December 22, 1981

*William J. Egan,* with whom was *Judy A. Rabkin,* for the appellants (named defendant and Dwight Building Company).

*Robert F. McWeeny* and *Karl Fleischmann,* with whom, on the brief, was *David L. Gussak,* for the appellees (plaintiff and cross-complainant Allied Electric Supply Corporation).

PETERS, J. This case is a challenge to the constitutionality of our mechanic's lien statutes as they affect the rights of general contractors.[1] The plaintiff, General Electric Supply Company (hereinafter GESCO), brought an action to foreclose its mechanic's lien on the real property of the defendant Southern New England Telephone Company (hereinafter SNETCO), naming as defendants SNETCO and other lienors. In that action, Dwight Building Company (hereinafter Dwight) successfully moved to intervene as a party defendant.[2] After a hearing, a judgment of foreclosure was rendered for the plaintiff and for Allied Electric Supply Corporation (hereinafter Allied), another lienor. From this judgment the defendants SNETCO and Dwight are appealing, raising questions with regard to both the constitutionality of the mechanic's lien statutes and the calculation of the lienors' claims.

In the trial court the parties stipulated to the following facts: On or about November 21, 1973, SNETCO and Dwight signed a contract under which Dwight agreed to serve as general contractor for

---

[1] General Statutes §§ 49-33 through 49-40a. These statutes underwent a technical revision in 1979, although their substance remained unchanged. Since the liens at issue were filed prior to 1979, we cite the earlier versions throughout.

[2] General Statutes § 52-102. The other original defendants are no longer parties to this action.

construction of a building on property owned by SNETCO. On or about December 13, 1973, Dwight in turn subcontracted with Johnson Electric Company, Inc. (hereinafter Johnson) for the performance of electrical work on the construction project. Johnson withdrew from the project before completing its assigned work and has since been adjudicated bankrupt. Dwight, which had already paid Johnson for work done, contracted with two other electrical firms for the completion of Johnson's work and paid those firms accordingly.

On August 8, 1975, seeking payment for material and services supplied to Johnson and for repairs of water damaged equipment, GESCO, a second tier subcontractor, filed a notice of intent to claim a mechanic's lien under General Statutes § 49-35 and a mechanic's lien under General Statutes § 49-33 on SNETCO's property. A copy of the notice of intent was mailed to Dwight as well as to SNETCO. A month later, on September 19, 1975, Allied, another second tier subcontractor, filed its own notice of intent and mechanic's lien on SNETCO's property, also seeking payment for material and services supplied to Johnson.[3] At the time both liens were filed, their combined total was exceeded by the amount SNETCO still owed Dwight; SNETCO thereafter withheld from Dwight the amounts claimed by GESCO and Allied.

In the subsequent trial of GESCO's action to foreclose its mechanic's lien on SNETCO's property, initiated on February 2, 1976, the defendants SNETCO and Dwight successfully challenged the claims of several potential lienors. The trial judge,

[3] Both GESCO and Allied also filed notice of lis pendens on the New Haven land records.

however, upheld the claim of GESCO in the amount of $94,983.90 and the claim of Allied on its cross-complaint in the amount of $4960.90; they were also awarded interest. Only SNETCO and Dwight have appealed. They have raised three issues: whether the Connecticut mechanic's lien statutes deny procedural due process to a general contractor by failing to provide such a person with an independent right to a hearing; whether the trial court erred in finding that the property owner had agreed to pay for repairs to storm-damaged equipment; and whether the trial court erred in awarding interest to the lienors.

I

The defendants' constitutional challenge to our mechanic's lien statutes; General Statutes §§ 49-33 through 49-40a; rests on the argued inadequacy of access to a judicial hearing for a general contractor who wishes to contest the imposition of a lien on the real property of the owner whose land is being improved, repaired or developed. The defendants have no quarrel with the statutory protection now afforded to the landowner, either in principle or in its application to the facts of this case. They maintain instead that the general contractor is adversely affected by the imposition of a lien on the property of the owner, because the result of notice of a lien is invariably to freeze assets to which the general contractor would otherwise be entitled. Section 49-36 of the General Statutes measures the lienors' rights against the owner with reference to a lienable fund created by payments owed to the general contractor under the prime contract at the time of notice. General Statutes § 49-36; *Seaman* v. *Climate Control Corporation,* 181 Conn. 592, 596, 601–604,

436 A.2d 271 (1980). This statute, the defendants claim, exerts substantial pressure upon the owner to withhold further payments from the general contractor once any mechanic's liens are filed. Therefore, the defendants argue, the general contractor has a sufficient economic interest in the imposition of such liens to merit an independent constitutional right to a hearing to challenge their validity.[4]

The trial court considered this argument and rejected it on the ground that "the statute authorizes a lien on the real propery of the owner, not on any funds of the owner, and clearly not on any property of the general contractor." Since withholding of funds upon notice of liens was authorized by the contract between SNETCO and Dwight, the court concluded that whatever action the owner might take upon the filing of liens was essentially contractual in nature. Hence Dwight was not constitutionally entitled to the same notice and protection that the statutes provided to the owner. The trial court therefore held that "[t]he defendants have failed to meet their burden of establishing the invalidity of the statute beyond a reasonable doubt and that its effect on them adversely affects a constitutionally protected right which they have."

In order to evaluate the defendants' renewed constitutional claim, it is important to review briefly the present Connecticut statutes governing mechanic's liens and the rights to notice and to a hearing that they contain. At present, a person filing a mechanic's lien must provide written notice to the

---

[4] Although the defendants' brief claims as well a lack of timely notice of the liens, at oral argument the defendants conceded that, since actual notice existed, the heart of their complaint is lack of access to a reasonable hearing at a reasonable time.

owner of the property attached; General Statutes § 49-34;[5] any lienor other than the original contractor or a subcontractor whose contract has been approved in writing by the owner must also serve a notice of intent to file a mechanic's lien on the owner. General Statutes § 49-35.[6] Any owner of the

[5] "[General Statutes] Sec. 49-34. CERTIFICATE OF LIEN TO BE RECORDED AND NOTICE GIVEN TO OWNER. No such lien shall be valid, unless the person performing such services or furnishing such materials, within sixty days after he has ceased to do so, lodges with the town clerk of the town in which such building, lot or plot of land is situated a certificate in writing, describing the premises, the amount claimed as a lien thereon, the name or names of the person against whom the lien is being filed and the date of the commencement of the performance of services or furnishing of materials, stating that the amount claimed is justly due, as nearly as the same can be ascertained, and subscribed and sworn to by the claimant; which certificate shall be recorded by the town clerk with deeds of land, and within the same time, or prior to the lodging of such certificate but not later than seven days after lodging such certificate, serves a true and attested copy of such certificate upon the owner of such building, lot or plot of land in the same manner as is provided for the service of the notice in section 49-35."

[6] "[General Statutes] Sec. 49-35. NOTICE OF INTENT. LIENS OF SUBCONTRACTORS AND MATERIALMEN. No person other than the original contractor for the construction, raising, removal or repairing of the building, or the development of any lot, or the site development or subdivision of any plot of land or a subcontractor whose contract with such original contractor is in writing and has been assented to in writing by the other party to such original contract, shall be entitled to claim any such lien, unless, after commencing, and not later than sixty days after ceasing, to furnish materials or render services for such construction, raising, removal or repairing, he gives written notice to the owner of such building, lot or plot or land that he has furnished or commenced to furnish materials, or rendered or commenced to render services, and intends to claim a lien therefor on such building, lot or plot of land; which notice shall be served upon such owner, if he resides in the same town in which such building is being erected, raised, removed or repaired or such lot is being improved, or such plot of land is being improved or subdivided, by any indifferent person, by leaving with him or at his usual place of abode a true and attested copy thereof. If such owner does not reside in such town, but has a known agent therein, such notice may be so served upon such agent, otherwise it may be served by any indifferent person, by mailing a true and attested

real estate may apply to the court for reduction or discharge of one or more mechanic's liens at any time and may, upon notice to all lienors and any other owners of the property, gain a prompt hearing. General Statutes § 49-35a (a).[7] The defendants concede that under this scheme the property owner's constitutional rights are fully accommodated. See *Roundhouse Construction Corporation* v. *Telesco Masons Supplies Co.,* 168 Conn. 371, 383, 362 A.2d 778, vacated, 423 U.S. 809, 96 S. Ct. 20, 46 L. Ed. 2d

copy of such notice to such owner at the place where he resides. When there are two or more owners, such notice shall be so served on each owner. Such notice, with the return of the person who served it endorsed thereon, shall be returned to the original maker thereof within said period of sixty days. No subcontractor, without a written contract complying with the provisions of this section, and no person who furnishes material or renders services by virtue of a contract with the original contractor or with any subcontractor, shall be required to obtain an agreement with, or the consent of, the owner of the land, as provided in section 49-33, to enable him to claim a lien under this section."

[7] "[General Statutes] Sec. 49-35a. *APPLICATION FOR REDUCTION OR DISCHARGE. FORMS. HEARING. ENTRY FEE. (a) Whenever one or more mechanic's liens is placed upon any real estate pursuant to sections 49-33, 49-34, 49-35 and 49-38, the owner of such real estate, if no action to foreclose such lien is then pending before any court, may make application, together with a proposed order and summons, to the superior court or the court of common pleas for the county or judicial district in which the lien may be foreclosed under the provisions of section 52-19, or to any judge thereof, that a hearing or hearings be held to determine whether such lien or liens should be discharged or reduced. The court or judge shall thereupon order reasonable notice of such application to be given to the lienor or lienors named therein and, if the application is not made by all owners of such real estate as may appear of record, shall order reasonable notice of such application to be given to all other such owners, and shall set a date or dates for the hearing or hearings to be held thereon. If such lienor or lienors or any owner entitled to notice is not a resident of this state, such notice shall be given by personal service, registered or certified mail, publication or such other method as the court or judge shall direct. At least four days notice shall be given to such lienor, lienors or owners entitled to notice prior to the date of such hearing."

29 (1975), on remand, 170 Conn. 155, 365 A.2d 393, cert. denied, 429 U.S. 889, 97 S. Ct. 246, 50 L. Ed. 2d 172 (1976).

The gravamen of Dwight's complaint is that there is no similar unconditional right to a hearing for a general contractor. For Dwight, the only recourse is to use § 49-37 (a), which permits "any person interested" in the real estate to dissolve a mechanic's lien by substituting a bond with surety for the lien.[8]

[8] "[General Statutes] Sec. 49-37. DISSOLUTION OF MECHANIC'S LIEN BY SUBSTITUTION OF BOND. JOINDER OF ACTIONS ON CLAIM AND BOND. (a) Whenever any mechanic's lien has been placed upon any real estate pursuant to sections 49-33, 49-34, and 49-35, the owner of such real estate, or any person interested therein, may make an application to any judge of the superior court or of the court of common pleas that such lien be dissolved upon the substitution of a bond with surety, and such judge shall order reasonable notice to be given to the lienor of such application. If such lienor is not a resident of the state, such judge may order notice to be given by publication, registered or certified letter or personal service. If such judge is satisfied that the applicant in good faith intends to contest such lien, he shall, if the applicant offers a bond, with sufficient surety, conditioned to pay to the lienor or his assigns such amount as a court of competent jurisdiction may adjudge to have been secured by such lien, with interest and costs, order such lien to be dissolved and such bond substituted therefor and shall return such application, notice, order and bond to the clerk of the superior court for the county wherein such lien is recorded; and, if the applicant, within ten days from such return, causes a copy of such order, certified by such clerk, to be recorded in the town clerk's office where such lien is recorded, such lien shall be dissolved. Whenever a bond is substituted for any lien after an action for the foreclosure of a lien has been commenced, the plaintiff in such foreclosure may amend his complaint, without costs, so as to make the action one upon such bond with which the plaintiff may join an action to recover upon his claim. Whenever a bond is substituted for any lien before an action for the foreclosure of the lien has been commenced, the plaintiff may join the action upon the bond with an action to recover upon his claim. Whenever a bond has been substituted for any lien, pursuant to this section, unless an action is brought to recover upon such bond within one year from the date of recording the certificate of lien, such bond shall be void."

Dwight in fact procured such a bond on October 28, 1975.

The principal or surety on the bond may then apply to the court for a hearing on the validity or the amount of the lien. General Statutes § 49-37 (b) (1).[9] Thus, a general contractor, as a person interested in the real estate, may indeed obtain a hearing but only at the cost of a surety bond. *Henry F. Raab Connecticut, Inc.* v. *J.W. Fisher Co.,* 183 Conn. 108, 116, 438 A.2d 834 (1981).

The statutory requirement that any interested party other than the property owner must post a bond to obtain a hearing on a mechanic's lien raises serious doubts about the constitutionality of our statutory scheme. It is well established that deprivation of the use and possession of property without a hearing violates the due process clause of the fourteenth amendment. *North Georgia Finishing, Inc.* v. *Di-Chem, Inc.,* 419 U.S. 601, 606, 95 S. Ct. 719, 42 L. Ed. 2d 751 (1975); *Fuentes* v. *Shevin,* 407 U.S.

---

[9] "[General Statutes] Sec. 49-37. DISSOLUTION OF MECHANIC'S LIEN BY SUBSTITUTION OF BOND. JOINDER OF ACTIONS ON CLAIM AND BOND. ... (b) Whenever a bond has been substituted for any lien pursuant to this section: (1) The principal or surety on such bond, if no action to recover on such bond is then pending before any court, may make application, together with a proposed order and summons, to the superior court or the court of common pleas for the county or judicial district in which such action may be brought, or to any judge thereof, that a hearing be held to determine whether the lien for which such bond was substituted should be declared invalid or reduced in amount. The court or judge shall thereupon order reasonable notice of such application to be given to the obligee on such bond and, if the application is not made by all principals or sureties on such bond, shall order reasonable notice of such application to be given to all other such principals and sureties, and shall set a date for the hearing to be held thereon. If such obligee or any principal or surety entitled to notice is not a resident of this state, such notice shall be given by personal service, registered or certified mail, publication or such other method as the court or judge shall direct. At least four days notice shall be given to such obligee, principal and surety entitled to notice prior to the date of such hearing."

67, 86, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972); *Society for Savings* v. *Chestnut Estates, Inc.*, 176 Conn. 563, 570, 409 A.2d 1020 (1979); *Roundhouse Construction Corporation* v. *Telesco Masons Supplies Co.*, supra, 384–85. Courts in other jurisdictions that have considered the conditioning of an attachment hearing or dissolution on a bond are divided in their results. For cases rejecting a bond as excessively burdensome see, e.g., *Guzman* v. *Western State Bank of Devils Lake, No. Dak.*, 516 F.2d 125, 131 (8th Cir. 1975); *Mississippi Chemical Corporation* v. *Chemical Construction Corporation*, 444 F. Sup. 925, 938 (S.D. Miss. 1977); *Hillhouse* v. *City of Kansas City*, 221 Kan. 369, 376, 559 P.2d 1148 (1977); *Williams* v. *Matovich*, 172 Mont. 109, 114, 560 P.2d 1338 (1977); for cases accepting a bond as a procedural safeguard see, e.g., *Jonnet* v. *Dollar Savings Bank of City of New York*, 530 F.2d 1123, 1130 (3d Cir. 1976); *Aaron Ferer & Sons Co.* v. *Berman*, 431 F. Sup. 847, 852 (D. Neb. 1977); *In the Matter of McLarty Industries, Inc.*, 2 B.R. 68, 74 (N.D. Ga. 1979); *Unique Caterers, Inc.* v. *Rudy's Farm Co.*, 338 So. 2d 1067, 1070–71 (Fla. 1976). In light of the year that may elapse before a lienor must either foreclose or forfeit his lien, the defendants have made out a strong prima facie case that our statutes may operate to deprive a general contractor of a prompt hearing. General Statutes § 49-39;[10] *Roundhouse Construction Cor-*

---

[10] "[General Statutes] Sec. 49-39. TIME LIMITATION OF MECHANIC'S LIEN. ACTION TO FORECLOSE PRIVILEGED. No mechanic's lien shall continue in force for a longer period than one year after such lien has been perfected, unless the party claiming such lien commences an action to foreclose the same, by complaint, cross-complaint or counterclaim, and files a notice of lis pendens in evidence thereof with the town clerk within one year from the date such lien was filed with such town clerk or within sixty days of any final disposition of an appeal taken in accordance with section 49-35c, whichever is

*poration* v. *Telesco Masons Supplies Co.,* supra, 380-81, 383. We are, however, persuaded that this is not the case in which the defendants' argument may properly be raised.

This case poses difficulties for the defendants' due process claim because of the arena in which the defendants have chosen to vindicate that claim and the protagonists whom they have elected to enlist in the fray. It is fundamental that a party challenging "the constitutionality of a statute must prove that the statute has adversely affected a constitutionally protected right 'under the facts of his particular case and not merely under some possible or hypothetical set of facts not proven to exist.' *Hardware Mutual Casualty Co.* v. *Premo,* 153 Conn. 465, 471, 217 A.2d 698 (1966); *State* v. *Cuvelier,* 175 Conn. 100, 111-12, 394 A.2d 185 (1978); *Gentile* v. *Altermatt,* 169 Conn. 267, 307, 363 A.2d 1 (1975), appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1976); *Kellems* v. *Brown,* 163 Conn. 478, 483, 313 A.2d 53, appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678 (1972); *Adams* v. *Rubinow,* 157 Conn. 150, 152–53, 251 A.2d 49 (1968). Furthermore, a person contesting a statute's constitutionality has a heavy burden to establish its invalidity beyond a reasonable doubt. *Roundhouse Construction Corporation* v. *Telesco Masons Supplies Co.,* supra, 385; *Kellems* v. *Brown,* supra, 486; *Adams* v. *Rubinow,* supra, 152." *Weil* v. *Miller,* 185 Conn.

later. Each such lien, after the expiration of such one-year period or sixty-day period, as the case may be, without action commenced and notice thereof filed as aforesaid, shall be invalid and discharged as a matter of law. An action to foreclose a mechanic's lien shall be privileged in respect to assignment for trial. With respect to any such lien which was validated in accordance with the provisions of section 49-37a, such one-year period or sixty-day period, as the case may be, shall toll from the date of such validation."

495, 501–502, 441 A.2d 142 (1981). The constitutional right asserted here by the general contractor is the right to be heard, at any time, without having to post a bond, when payments otherwise due on a prime contract are withheld by the owner of the real property. The general contractor's dispute concerns a property interest in an account; see General Statutes § 42a-9-106;[11] and his natural protagonist should be the person claiming a superior right to that account, the owner of the real property. Yet the general contractor in this litigation seeks a determination of his constitutional rights in a lawsuit involving different property and different defendants. We are not persuaded that foreclosure of a statutory lien on the real property of the owner should be the testing ground for rights to an account. We are equally unpersuaded that subcontractors enforcing their mechanic's liens should be burdened with defending against the constitutional claims of others.

The defendants acknowledge, as they must, that the general contractor's property right to an account is not identical to the subcontractors' rights to a mechanic's lien on the owner's property. To bridge this gap in the respective property interests, they rely on language in *Seaman* v. *Climate Control Corporation*, 181 Conn. 592, 604, 436 A.2d 271 (1980), in which this court explored the basis

[11] "[General Statutes] Sec. 42a-9-106. DEFINITIONS: 'ACCOUNT'; 'GENERAL INTANGIBLES.' 'Account' means any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper, whether or not it has been earned by performance. 'General intangibles' means any personal property, including things in action, other than goods, accounts, chattel paper, documents, instruments and money. All rights to payment earned or unearned under a charter or other contract involving the use or hire of a vessel and all rights incident to the charter or contract are accounts."

upon which second tier subcontractors are entitled to mechanic's liens. We there spoke of a lienable fund, a fund "created by payments owed to the general contractor." That fund, on subrogation principles, limits the totality of the mechanic's liens that may be asserted against the property of the owner. The fact that mechanic's liens are measured by and limited to this lienable fund does not mean that the mechanic's liens are liens *on* the lienable fund. In other contexts, we have long recognized a distinction between the object on which a statute operates and the measure of the statute's operation. See *Connecticut Bank & Trust Co.* v. *Tax Commissioner,* 178 Conn. 243, 247–48, 423 A.2d 883 (1979). So here we concur with the trial court that the filing of a mechanic's lien does not operate as a direct taking of property of the general contractor.

Nor can we agree with the defendants' argument that the filing of a mechanic's lien operates as an indirect statutory taking of the general contractor's property. It may well be prudent for an owner to protect himself from dual liability by refusing thereafter to make further payments from the lienable fund to the general contractor, but our statute does not compel such withholding. Although in *Stone* v. *Moomjian,* 92 Conn. 476, 483–85, 103 A. 635 (1918), this court spoke of an owner's "duty . . . to retain . . . moneys due the original contractor," the court itself clarified that language by noting that the governing statute, now General Statutes § 49-36,[12] does not expressly prohibit additional pay-

---

[12] "[General Statutes] Sec. 49-36. LIENS LIMITED; APPORTIONMENT; PAYMENTS TO ORIGINAL CONTRACTOR. No such lien shall attach to any building or its appurtenances, or to the land on which the same stands, or any lot, or any plot of land, in favor of any person, to a greater amount in the whole than the price which the owner agreed

ments to the general contractor but only describes the consequences of such payments for the duties owed by the owner to the subcontractor lienor. In point of fact, since the prime contract between the owner and the general contractor in this case expressly authorized the withholding of payments when third party claims are filed,[13] we cannot determine whether the owner's decision to withhold the

to pay for such building and its appurtenances or the development of any such lot, or the development of any such plot of land. When there are several claimants and the amount of their united claims exceeds such price, the claimants, other than the original contractor, shall be first paid in full, if the amount of such price is sufficient for that purpose; but, if not, it shall be apportioned among the claimants having such liens, other than the original contractor, in proportion to the amount of the debts due them respectively; and the court having jurisdiction thereof, on application of any person interested, may direct the manner in which such claims shall be paid; but, in determining the amount to which any lien or liens shall attach upon any land or building, or lot or plot of land, the owner of such land or building or lot or plot of land shall be allowed whatever payments he has made, in good faith, to the original contractor or contractors, before receiving notice of such lien or liens. No payments made in advance of the time stipulated in the original contract shall be considered as made in good faith, unless notice of intention to make such payment has been given in writing to each person known to have furnished materials or rendered services at least five days before such payment is made."

[13] Article 9, § 9.5.1.2 of the General Conditions of the Contract for Construction provides as follows: "9.5 PAYMENTS WITHHELD

"9.5.1 The Architect may decline to approve an Application for Payment and may withhold his Certificate in whole or in part, to the extent necessary reasonably to protect the Owner, if in his opinion he is unable to make representations to the Owner as provided in Subparagraph 9.4.2. The Architect may also decline to approve any Applications for Payment or, because of subsequently discovered evidence or subsequent inspections, he may nullify the whole or any part of any Certificate for Payment previously issued, to such extent as may be necessary in his opinion to protect the Owner from loss because of: . . .

".2 third party claims filed or reasonable evidence indicating probable filing of such claims . . . ."

lienable fund from the general contractor in this case was primarily an exercise of statutory rights or of contractual rights.

The defendants are mistaken in their reliance on this court's recent decisions in *Seaman* v. *Climate Control Corporation,* supra, or in *Henry F. Raab Connecticut, Inc.* v. *J. W. Fisher Co.,* supra, to buttress their position that the present proceedings involve a taking of the general contractor's property. In *Seaman* we reviewed the history of Connecticut's mechanic's lien statutes to conclude that a subcontractor is subrogated to the general contractor's claims against the owner in spite of an intervening contractor's default. *Seaman* v. *Climate Control Corporation,* supra, 601–605. We expressly declined to consider "[h]ow the risk of defaulting first tier subcontractors should be allocated between the owner and the general contractor"; *Seaman* v. *Climate Control Corporation,* supra, 606; and we nowhere postulated a reciprocal variant of the *Seaman* holding, that a general contractor is subrogated to the statutory rights of the owner when a subcontractor files a mechanic's lien. In *Raab* we held that a subcontractor is a "person interested" in the real estate for the purposes of General Statutes § 49-37 (a) and may file a surety bond to dissolve a mechanic's lien. *Henry F. Raab Connecticut, Inc.* v. *J. W. Fisher Co.,* supra, 116–17. This holding, however, takes Dwight no further toward its goal, since *Raab* recognized a continued distinction between the rights of the owner and of other "interested parties" when it held that only an owner may apply for a hearing without posting a bond under § 49-35. *Henry F. Raab Connecticut, Inc.* v. *J. W. Fisher Co.,* supra, 113.

In sum, although the defendants may well be right that the general contractor suffers economic injury as a consequence of the imposition of mechanic's liens on the property of the owner, we are not persuaded that an action to foreclose the mechanic's lien provides the proper forum for testing the general contractor's constitutional claims. Why should the subcontractor lienors defend constitutional claims arising not out of their conduct but out of the conduct of the owner of the real property? If the real issue is the propriety of the withholding of funds from the general contractor by the owner, why should that issue not be litigated between those parties instead? It would be inconsistent with the avowed remedial purpose of our mechanic's lien statutes, "to furnish security for a contractor's labor and materials"; *Seaman* v. *Climate Control Corporation,* supra, 597; see *H & S Torrington Associates* v. *Lutz Engineering Co.,* 185 Conn. 549, 555–56, 441 A.2d 171 (1981); to impose upon subcontractors the burden of litigating issues to which they are strangers.

These questions bring into focus another reason why the present case is not the right vehicle for the adjudication of the constitutional rights of a general contractor. We note that, throughout these proceedings, both in the trial court and in this court, the defendants SNETCO and Dwight, the owner and the general contractor, have been represented by the same counsel. The record demonstrates then an apparent identity of interest between the owner and the general contractor which is fundamentally inconsistent with the constitutional claims which are now being asserted. If in fact there is no conflict between SNETCO and Dwight, then Dwight cannot have suffered any

cognizable injury in this case. The defendants have conceded that SNETCO, as owner, was fully and correctly protected by the governing statutes. Under those statutes, SNETCO could have obtained a hearing at any time, without first having to file a bond. Dwight could have been made a party to such a hearing, either at its own request or that of SNETCO. Alternatively, Dwight might have asked SNETCO to initiate hearing proceedings in which Dwight might then join. Neither SNETCO nor Dwight availed itself of these opportunities to avoid the delays of which Dwight now complains.

On this record, the relationship between the owner and the general contractor deprives the court of the necessary adversarial controversy in which their rights and duties inter se are best adjudicated. The defendants have acted as if SNETCO were a mere stakeholder, having no interests of its own, other than to avoid double liability to the mechanic's lienors and to the general contractor. Our reading of the statutes persuades us to the contrary. SNETCO, as *Stone* v. *Moomjian,* supra, indicates, bears independent responsibility for the lien claims of subcontractors on its property. It may, in the prime contract, shift to the general contractor some of the risks imposed upon it by statute. But the owner remains, vis-a-vis the subcontractors, a principal with nondelegable duties.

The constitutional propriety of dealings between an owner and a general contractor should be adjudicated when there is a factual dispute to be adjudicated between them. We can envision a case in which a property owner relies on our statutes as the basis for withholding payment while a general contractor, the real party at interest, resists that with-

holding and seeks to question the validity of the lien. Under those circumstances, the constitutional issue will be ripe for consideration.

## II

The defendants' second assignment of error challenges the amount of the lien claimed by the plaintiff GESCO. GESCO, in its notice of intent to claim a mechanic's lien and in its filing of its mechanic's lien, alleged that it had supplied materials and services to Johnson in the amount of $94,983.90. Of this amount, $11,913 represented services rendered in the repair of a piece of electrical equipment known as a switchgear. Despite the defendants' objection that repair costs were not a lienable item on this project, the trial court concluded that the $11,913 cost of repairing the switchgear was properly included in GESCO's mechanic's lien.

The trial court's memorandum of decision contains the following findings of fact with regard to the lienability of the switchgear repair costs: The switchgear was installed early in the job and GESCO was paid for it by Johnson. In the latter part of May 1975, the switchgear was flooded through no fault on the part of SNETCO, Dwight or GESCO. GESCO was contacted by representatives of Johnson and asked to do whatever was necessary to make the equipment serviceable. The field representative from SNETCO was on the job regularly and was aware of the problem with the switchgear. GESCO performed the necessary work on the equipment at a cost of $11,913, the reasonableness of which is not in dispute, and the machine is now in service. GESCO has not been paid for this work, although some time after June

23, 1975, Dwight paid Johnson a sum of money which included the $11,913 billed by GESCO to Johnson for the material and labor performed in repairing the switchgear.

The trial court concluded, on the basis of these findings, that since repair work in general is lienable under General Statutes § 49-33; *Stone* v. *Rosenfield,* 141 Conn. 188, 191–92, 104 A.2d 545 (1954); there was sufficient evidence of consent "by virtue of an agreement with or by the consent of the owner" to sustain GESCO's claim. The defendants do not challenge the legal principles on which the trial court relied but maintain instead that the court erred in finding a sufficient factual basis for the application of these principles.

The defendants' most cogent attack on the factual findings asserts that there was no evidence to support the trial court's finding that Dwight paid Johnson a sum of money which included the bill for the switchgear repairs. This payment was not a matter covered either in the pleadings or in the stipulation filed by the parties. Therefore if no evidence was introduced in support of this finding, as the defendants allege, the finding is clearly erroneous and must be stricken. Practice Book § 3060D. The exhibits filed as part of the record in this case do contain the prime contract between SNETCO and Dwight, but that contract supports the defendants' position because in it SNETCO disclaims responsibility for reimbursement of costs incurred in "making good any damage to the property."[14]

[14] Article 10 of the Standard Form of Agreement Between Owner and Contractor, entitled "Costs Not to be Reimbursed," includes the following provision: "10.1.5 Costs due to the negligence of the Contractor, any Subcontractor, anyone directly or indirectly employed by any of them, or for whose acts any of them may be liable, includ-

GESCO has not challenged the admissibility of this contract nor contradicted the defendants' assertion that its provisions were incorporated by reference, as is customary, in the contracts of the first and second tier subcontractors. The only evidence that is properly before us suggests therefore that payment for repair costs would not have been authorized by any of the applicable written contracts.

GESCO proffers a tangential response to this attack on the trial court's finding that such a payment was nonetheless made, and inferentially authorized. GESCO asserts that the defendants may not on an appeal urge that a finding or conclusion is unsupported by the evidence without including in our record a transcript of the proceedings in the trial court. No such transcript has been filed by any of the parties in this case. Neither our statutes nor our rules of practice expressly require the filing of a transcript as a condition to the perfection of an appeal. Contrast, e.g., Fed. Rules of App. Proc., Rule 10 (b) (2).[15] In our rules, the closest analogy is found in relation to claims that a verdict should have been set aside, when a party

---

ing but not limited to the correction of defective Work, disposal of materials and equipment wrongly supplied, or making good any damage to property."

Another subsection of Article 10 lists, as costs not to be reimbursed, "10.1.6 The cost of any item not specifically and expressly included in the items described in Article 9."

GESCO has pointed to no provision in Article 9 that purports to provide express authority for the reimbursement of repair costs without the written consent of the owner.

[15] Rule 10 (b) (2), Fed. Rules of App. Proc., reads as follows: "(b) THE TRANSCRIPT OF PROCEEDINGS; DUTY OF APPELLANT TO ORDER; NOTICE TO APPELLEE IF PARTIAL TRANSCRIPT IS ORDERED. . . . (2) If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, he shall include in the record a transcript of all evidence relevant to such finding or conclusion."

asserting the absence of supporting evidence is permitted to "state that claim in his brief and submit no evidence . . . ." Practice Book § 3060U. Under that provision, the adverse party who is put to the expense of procuring and submitting substantiating evidence is entitled to recover costs unjustifiably caused by the claimant's posture. Our former practice, when a trial court prepared formal findings of fact and conclusions of law, similarly imposed upon the appellee the burden of printing evidence to show that no error was committed. *Hartford National Bank & Trust Co.* v. *DiFazio,* 177 Conn. 34, 39–40, 411 A.2d 8 (1979); *Engelke* v. *Wheatley,* 148 Conn. 398, 411, 171 A.2d 402 (1961). In this case, the defendants, in their preliminary statement of the issues on appeal, gave GESCO timely notice that the repair item would be contested. GESCO therefore had ample opportunity itself to procure a transcript.

Those who take an appeal to this court indubitably bear the burden of persuasion that they have been aggrieved by error committed by the trial court. *Anonymous* v. *Norton,* 168 Conn. 421, 430, 362 A.2d 532, cert. denied, 423 U.S. 935, 96 S. Ct. 294, 46 L. Ed. 2d 268 (1975); *Obermeier* v. *Nielson,* 158 Conn. 8, 13, 255 A.2d 819 (1969); *Thorne* v. *Zoning Board of Appeals,* 156 Conn. 619, 621, 238 A.2d 400 (1968). That burden never shifts to the appellee. But when the appellant puts into issue the sufficiency of the evidence to support a finding of fact by the trial court, our present rules permit the appellant to impose upon the appellee the burden of producing the evidence that is necessary for a decision by this court. See *Jennings* v. *Reale Construction Co.,* 175 Conn. 16, 19–20, 392 A.2d

962 (1978); *Morningside Assn.* v. *Morningside Development, Inc.,* 172 Conn. 60, 64, 372 A.2d 141 (1976).

In the absence of any evidence to support the trial court's finding with respect to the disputed payment, we are obligated to conclude that the defendants have sustained their burden of showing that this finding was clearly erroneous. The only other available underpinning for the trial court's conclusion that SNETCO had consented to pay for repair of the switchgear was its factual finding that SNETCO's field representative was regularly on the job and aware of the problem with the switchgear. This finding alone is insufficient to establish consent. Although the provisions of a written contract can be waived by a subsequent oral agreement; see, e.g., *Brian Construction & Development Co.* v. *Brighenti,* 176 Conn. 162, 169–70, 405 A.2d 72 (1978); *Grote* v. *A. C. Hine Co.,* 148 Conn. 283, 286, 170 A.2d 138 (1961); *O'Loughlin* v. *Poli,* 82 Conn. 427, 432, 74 A. 763 (1909); see Corbin, Contracts § 1294; Calamari & Perillo, Law of Contracts (2d Ed.) § 3-6; 1 Restatement (Second), Contracts § 89 (1981); the mere presence of a representative on the job site is not sufficient to establish either his authority to enter into such an agreement or his making of such an agreement in fact.

The defendants are therefore entitled to prevail on their second claim of error. GESCO's judgment of $94,983.90 must be reduced by $11,913 to $83,070.90.

## III

The defendants' third and final claim of error urges us to hold that the trial court should not have awarded interest to GESCO and to Allied. The

trial court held that the lienors were entitled to interest from the time that their debts became due and payable, in 1975. Although it recognized the bona fides of the defendants' refusal to pay, the court nevertheless concluded that the defendants' retention of the moneys owed to the lienors was unlawful and thus wrongful. Invoking the general rule that the demands of justice in each case should determine the award of interest; see *Scribner* v. *O'Brien, Inc.*, 169 Conn. 389, 405–406, 363 A.2d 160 (1975); *Cecio Bros., Inc.* v. *Feldmann*, 161 Conn. 265, 274–75, 287 A.2d 374 (1971); the court determined that the prevailing parties were entitled to be paid when they filed their liens. The court specifically noted the length of time for which moneys had been withheld and the size of the sums involved. Earlier in its memorandum of decision, the court had found that all of the lienable work was done properly and in a timely fashion. Except for questioning the lienability of the switchgear repair, the defendants have never denied that the lienors performed in a good and workmanlike manner.

The allowance of interest pursuant to General Statutes § 37-3 (now § 37-3a)[16] is primarily an equitable determination within the discretion of the trial court. *Scribner* v. *O'Brien, Inc.*, supra; *Southern New England Contracting Co.* v. *State*, 165 Conn. 644, 665, 345 A.2d 550 (1974). To find an

---

[16] "[General Statutes] Sec. 37-3. RATE RECOVERABLE AS DAMAGES. Section 37-3 is repealed.

"Sec. 37-3a. RATE RECOVERABLE AS DAMAGES. Except as provided in section 52-192a, interest at the rate of six per cent a year, and no more, may be recovered and allowed in civil actions, including actions to recover money loaned at a greater rate, as damages for the detention of money after it becomes payable except as otherwise provided with respect to demand obligations in section 42a-3-122 (4) (a). Judgment may be given for the recovery of taxes assessed and paid

abuse of discretion here we would have to conclude that the seriousness of the defendants' constitutional challenge to the mechanic's lien statutes necessarily prevented their detention of the lienors' moneys from being wrongful. This we decline to do. Just as a claimant's entitlement to interest is not automatically defeated if the claim is unliquidated in amount; see *Scribner* v. *O'Brien, Inc.,* supra; so also the claim may, in the interests of justice to the claimant, survive a constitutional challenge. To find an abuse of discretion in this case, when the defendants had available to them the means for expeditious resolution of the lienors' claims, would be particularly unwarranted.

There is error in part, the judgment is set aside and the case is remanded with direction to modify the judgment with regard to the plaintiff GESCO, so that the sum of $83,070.90 is the amount due the plaintiff on its mechanic's lien, with interest on that sum from the date of its filing. There is no error with respect to the judgment in favor of the defendant Allied Electric Supply Corporation.

In this opinion the other judges concurred.

---

upon the loan, and the insurance upon the estate mortgaged to secure the loan, whenever the borrower has agreed in writing to pay such taxes or insurance or both. Whenever the maker of any contract is a resident of another state or the mortgage security is located in another state, any obligee or holder of such contract, residing in this state, may lawfully recover any agreed rate of interest or damages on such contract until it is fully performed, not exceeding the legal rate of interest in the state where such contract purports to have been made or such mortgage security is located."