[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By writ, summons and complaint, dated April 9, 1997, the plaintiff, Glenn Morelli, is seeking damages for breach of contract from the defendant, David Ponelli. On June 6, 1997, the defendant filed his answer, set off and counterclaim. After a full trial, the court, based on a preponderance of the credible, relevant, reliable and legally admissible evidence and the reasonable, rational and lawful inference to be drawn therefrom, finds, determines and rules as follows:
GH Applied Technologies (GH), is a corporation organized and existing under the laws of the State of Connecticut, which is in the business of the sale and distribution of "herbal supplements, over the counter pharmaceuticals and activities ancillary thereto.
On or about and for some time prior to April 18, 1996, the principal product sold by the corporation was Herbal XTC (XTC).
XTC, at this time was under investigation as to its safety. Subsequently, it has been banned in several states including New York and Florida.
The court expressly finds that the plaintiff, owner of 100 shares of GH and Howard Silver, not a party to this action, but the president of GH, and the owner of the remaining 100 shares of GH, wanted to dispose of the company to avoid liability for any claims due to damages that might be the result of the use of XTC.
The defendant agreed to pay $350 per share for a total of $70,000. The plaintiff's 100 shares would bring $35,000.
However, the defendant and Howard Silver both believed that the contract for the sale of GH anticipated that the purchase price would only be payable from the proceeds of any sales of XTC.
The plaintiff, here, testified and claims that he entered into the contract with the intent that he would be paid regardless of whether the product XTC sold. CT Page 1898
After the parties agreed to the sale of the corporation and upon the transfer of some product, the bottom fell out of the market and XTC became an unsaleable product.
Because the plaintiff intended that he be paid for his stock regardless of any sales of XTC and the defendant intended that he would be liable for payment for the stock out of the sales of the product, the court expressly finds that this was no meeting of the minds, thus no enforceable contract between the parties.
A meeting of the minds occurs upon the parties' agreement to a mutuality of obligation. "The intention of the parties manifested by their words and acts is essential to determine whether a contract was entered into and what its terms were. Nutmeg StateMachinery Corporation v. Shuford, 129 Conn. 659, 661, 30 A.2d 911
(1942). This determination requires a finding of mutuality of obligation. Hess v. Dumouchel Paper Co., 154 Conn. 343, 347,225 A.2d 797." Intention in an inference of fact, and the conclusion is "not reviewable unless it was one that the trier could not reasonably make. Bianco v. Town of Darien, 157 Conn. 548, 557,254 A.2d 898; Grote v. A. C. Hine, Co., 148 Conn. 283, 286-87,170 A.2d 138 (1960).
In summation, the court expressly finds that the plaintiffs intent, upon entering into the contract, was that he was to be paid regardless of the sales of XTC and expressly finds that the intent of the defendant was to pay only out of sales of XTC. Thus, there was no meeting of the minds or mutuality of obligation to give rise to an enforceable contract. The court finds that no contract between the plaintiff and the defendant was created.
Accordingly, judgment may enter for the defendant on the plaintiffs complaint and for the plaintiff on the defendant's counterclaim. No costs to either party.
Daniel F. Spallone Judge Trial Referee