[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 STATEMENT OF THE CASE
CT Page 2664
The plaintiff is a professional ballet dancer with eighteen years experience in various capacities and roles with ballet groups.
On or about March 13, 2001, the artistic director of the defendant ballet company engaged the services of the plaintiff to perform in its production of Cinderella scheduled for May of 2001. This employment contract included rehearsals and the plaintiff did appear and participate in a rehearsal in March. He was paid for that participation.
As the result of an episode in which the artistic director was involved on or about March 14, 2001, the board of directors of the defendant met on March 29, 2001. At that meeting, the director was terminated and the board "reluctantly agreed that Cinderella would have to be postponed until next year." (Exhibit B, board meeting minutes).
Subsequently, the plaintiff received a phone call from the defendant's counsel in the course of which he was told that Cinderella had been cancelled and that he would not be paid the amount called for by the contract.
The plaintiff then brought an action in the Small Claims Section of this court, which the defendant then had transferred to this court.
While the defendant did file a counterclaim of dubious merit, it was ordered stricken and the action was defended primarily on the grounds of impossibility of performance. The defendant also argued that the plaintiff could have mitigated damages by seeking other employment.
 I
The plaintiff testified that his commitment to the defendant for May 2001 performances and the preceding rehearsals in March and April would have precluded him from auditioning for and/or accepting other engagements. This testimony was not refuted.
It is noted that the plaintiff had already commenced his contractual obligations by appearing for a March rehearsal.
He was not notified of the cancellation of the Cinderella performance until April 2 at the earliest.
The court must conclude that under these circumstances, the plaintiff could not have mitigated damages.
 II
CT Page 2665
The doctrine of impracticability or impossibility is available only in unusual circumstances.
 "A party claiming that a supervening event or contingency has prevented, and thus excused, a promised performance must demonstrate that: (1) the event made the performance impracticable; (2) the nonoccurrence of the event was a basic assumption on which the contract was made; (3) the impracticability resulted without the fault of the party seeking to be excused; and (4) the party has not assumed a greater obligation than the law imposes. 2 Restatement (Second), Contracts § 261; E. Farnsworth, Contracts (1982) § 9.6, p. 678."
Dills v. Enfield, 210 Conn. 705, 717 (1989).
The "event" advanced by the defendant as excusing performance is the termination of employment of its artistic director.
While one can argue the merits of the defendant's contention as to the "impracticability" of doing Cinderella, the second prong of this test forecloses the availability of this defense to the defendant. There was nothing, express or implied, to suggest that the continued employment of the artistic director was "a basic assumption on which the contract was made."
It is totally unlike, for example, a purchase and sale agreement where the buyer agrees to buy the seller's house, with the written provision that the buyer is excused if he is unable to obtain specific financing.
The plaintiff makes the further argument that the defendant was not without fault in creating the event which resulted in the impracticability. He supports this claim by pointing out that the board had been aware of the director's problem for several months and had issued him a final warning; one more transgression and he was to be terminated. Nevertheless, he was permitted to continue to function as director and to enter into contracts — such as the one at issue.
This court finds validity to this argument, for the board tolerated the status quo while knowing that at any moment this fragile situation could deteriorate. In effect, it assumed the risks that the continued uncontrolled employment of this employee entailed.
Further, although the defendant has phased its defense in terms of theimpossibility of performing Cinderella, the testimony elicited from its CT Page 2666 managing director and its present artistic director does not support this characterization. Instead, it was indicated that a production could have been put on, but it would not have been up to the quality standards to which the defendant adheres.
Finally, the defendant cites the case of Straus v. Kazemekas,100 Conn. 581 (1924), to support its defense of impossibility of performance. The vitality of that decision has been seriously eroded by recent cases. In Hess v. Dumouchell Paper Co., 154 Conn. 343 (1966), the court states, referring to Straus, "It is clear, however, that the modern approach to the doctrine has shed its reliance on this conceptualization. " (Id., at 350, citations omitted).
The Straus case in treating with this defense reads in pertinent part:
 "Three such implied conditions have become firmly established in the common law: 1. Where the legal impossibility arises from a change of law. 2. Where the specific thing which is essential to the performance of the contract is destroyed. 3. Where by sickness, or death, personal services or performance become impossible. A fourth implied condition is often recognized, which is difficult of a satisfactory statement. It has been stated substantially as follows: 4. Among the ways in which any contract ends and is dissolved, is the cessation or continuation of the existence of some thing or state of things upon the continuation or cessation of which the contract was known to depend, provided such cessation or continuation arises without fault in either contracting party. The Claveresk, 264 F. 276." Id., at 592.
Even if the court were to ignore the more recent decisions, the defendant's reliance on this case must fail. The first condition is clearly not applicable. No "specific thing" essential to the performance of the contract has been destroyed. The burning or destruction of a building which is the subject of a purchase and sale agreement would satisfy this condition.
The third condition is not applicable to this contract. The "personal services or performance" here was the undertaking of the plaintiff to perform at the behest of the defendant. Had the plaintiff incurred serious injuries, he could have sought application of the doctrine of impossibility to avoid the obligation to perform. That option is not available to the defendant because it did not contract for personal CT Page 2667 services or performances for the plaintiff
The fourth and final implied condition is a rather imperfect way of stating the second prong of the test repeated in Dills, supra. This is the requirement that the contract address the nonoccurrence as a basis assumption. As noted above, the parties did not include such language in the employment contract.
Further, this condition, to be available to the defendant, requires it to be without fault. The defendant has not clearly demonstrated that to be the case as the court noted above.
 CONCLUSION
Judgment may enter for the plaintiff in the amount of $3,020.00, (the figure counsel agreed to as representing the sum due the plaintiff under the contract if the court found for the plaintiff), plus taxable costs.
Pursuant to § 52-251a of the General Statutes, the court will allow the plaintiff reasonable attorney's fees. A hearing will be scheduled to permit the defendant to be heard on the award.
Anthony V. DeMayo, Judge Trial Referee