[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In the instant case, the plaintiff seeks damages for breach of a contract to construct a swimming pool. The complaint[1] is in three counts which are identical except for the designation of the defendant. In count 1, the party with whom the plaintiff contracted is described as Oxford Associates; in count 2, the party-defendant is described as Frank Rinaldi doing business as Oxford Associates; in count 3, the defendant is stated to be Frank Rinaldi without any further description. In the brief of the "defendants", mention is made of the plaintiff's failure to join Oxford Associates, Inc. as an indispensable party to the action.
As to the issue of which party is the proper defendant, the court finds that the following facts were established. On or about November or December 1989 when the contract was entered into, there was a corporation in existence known as Oxford Associates or Oxford Associates, Ltd., the stock of which was owned by Frank Rinaldi and his mother. Frank Rinaldi, as an individual, was a customer of the plaintiff's restaurant, the place where the contract was negotiated. In the course of the negotiations, nothing was said about Oxford Associates and at the trial it was not proven that during the negotiations the plaintiff was aware of the corporation's existence. The plaintiff's payments during the course of the contract were by checks on which Frank Rinaldi was named as payee. Moreover, in the counterclaim that accompanied the answer to the complaint, the description given of the defendant is "Frank Rinaldi d/b/a Oxford Associates." Consequently, the court concludes that the proper defendant is Frank Rinaldi and not his corporation.[2]
 I.
With respect to the merit of the issue raised by the complaint and counterclaim the facts set forth below have been found.
In November or December, 1989, the plaintiff, Antonio Setaro, and the defendant, Frank Rinaldi, entered into an oral contract whereby Rinaldi was to remove an existing pool and construct a new pool, according to Setaro's design, and an adjacent Jacuzzi spa at the house in Bethlehem that Setaro planned to use as his residence. No specific date was set in the contract for the completion of the work. The parties did agree, however, that the work would be finished by the end of April 1990. The contract price was $26,000.00. On December 19, 1989, the plaintiff paid $12,000.00 and on January 7, 1990, he paid another $10,000.00. CT Page 8631
The design for the pool was furnished to the defendant. By the end of December, 1990, work was proceeding apace. All that remained to be done by the end of winter, according to the defendant, was the application of plaster to the surfaces and the installation of one or two heaters for the pool and spa. One item of dispute was whether, as originally negotiated, the contract provided for one heater or two.
When the end of April 1990 arrived, the plaster had not been applied and no heater had been installed. The defendant's excuse was that plastering required clean water which the plaintiff failed to provide. According to the defendant, the water from a nearby pond, that the plaintiff said to use, was dirty and if used would have promoted discoloration. At the time that the defendant claimed a lack of clean water, other workmen were putting stucco on the exterior of the house. The application of stucco also requires the use of clean water and these workmen obtained it through a hose attached to the well on the premises. There was no evidence at all to show that the water from the well was unavailable to the defendant. As a matter of fact, the court finds the defendant's excuse for nonperformance untenable.
The pool and spa remained unfinished. On October 18, 1991, at a meeting in Bethlehem, the plaintiff accepted the defendant's offer to complete the work for the original price. In the meantime, on June 12, 1991, the plaintiff had received an estimate from Clearwater Pools, Inc. to finish the pool and spa for $12,650.00. When the defendant did not resume work, the plaintiff, on November 22, 1991, hired Clearwater to finish the job.
Under the contract with Clearwater, the work performed and the items furnished were as follows a crack in the pool was repaired and sealed, the cement was acid washed, the pool and spa were plastered, the plumbing was completed for the pool and spa, an oil pool heater was installed, two acqua lights were installed in the spa to replace ones found to be defective, a 1-1/2 H.P. spa blower was installed, one conduit was provided, as were a maintenance kit and an automated pool cleaner. At the time of trial, the plaintiff had paid Clearwater Pool, Inc. $5,920.00, and owed $6,729.70.
Aside from the $22,000.00 the plaintiff paid the defendant pursuant to their oral agreement, the plaintiff paid on behalf of the defendant the amount of $3,149.42 to O G Industries, Inc. This sum was paid in November 1990, to discharge a mechanic's lien caused by the defendant's failure to pay for concrete that he had ordered and used in the construction of the pool.
CT Page 8632 The defendant testified to items of extra work performed for which he claimed entitlement to $1,875.00. This list included concrete footing removal, $300.00; extra stone [required] because of concrete footing removal, $150.00; footing removal, $500.00; extra bench (steel and granite), $300.00; dewatering line — 20 feet, $200.00; dewatering five (5) days, $125.00; fiberglass in gunite — 30 yards at $10.00 per yard, $300.00.
The foregoing facts are supplemented by some additional findings that appear subsequently in this memorandum.
 II.
The court agrees with the defendant that impossibility of performance and frustration of purpose are recognized defenses in suits for breach of contract. See e.g. West Haven Sound Development Corporation v. West Haven, 201 Conn. 305, 313 (1986); Hess v. Dumouchel Paper Co., 154 Conn. 343, 349-51. But these defenses are factual matters. Hess, supra at 51. And, further, a party who asserts impossibility of performance must be without fault in the event that caused performance to become impossible or impractical. West Haven Sound Development Corporation, supra at 313.
In terms of fact, the court has discountenanced the defendant's stated reason — a lack of clean water — for excusing performance. Another reason might have been the plaintiff's failure to pay for the "extras" after the defendant sent his invoice. The difficulty with this reason is that payment for the "extras" was never established as a condition precedent to further services by the defendant under the oral contract.
"Where a time for performance is stated in an agreement, a party's performance within a reasonable time thereafter will be considered substantial performance unless the parties intend that that time for performance be of the essence." Miller v. Bourgoin,28 Conn. App. 491, 498 (1992). As with construction contracts generally, id., time was not of the essence in the parties' oral agreement making the reasonableness of time for completion another question of fact. Northeast Electrical Contractors v. Udolf,1 Conn. App. 169, 172 (1984).
In the court's view, the delay from the end of April, 1990 until mid-October, 1991, was an unreasonable period and rightfully gave the plaintiff an opportunity to terminate the contract. The plaintiff's assent to the defendant's offer of October 18, 1991, to complete the pool and spa does not change the picture because the defendant did not perform. Stated another way, the delay of a little more than one month between the defendant's promise and the plaintiff's hiring of Clearwater Pools, Inc. on November 12, 1991, CT Page 8633 standing alone ought not have constituted a material breach that justified termination. When considered with the defendant's previous record of nonperformance, the additional month was to the plaintiff a harbinger that past practice would continue. Termination of the contract was warranted since the defendant failed to complete the work within a reasonable time. See Martin v. Martin's News Service, Inc., 9 Conn. App. 304, 309 (1986).
 III.
When a contractor breaches a contract to construct something, an owner's damages are measured either by the reasonable cost of construction and completion in accordance with the contract or by the diminished value of the property if construction and completion in accordance with the contract would involve unreasonable economic waste. McCahill v. Town Country Associates, Ltd., 185 Conn. 37, 41 (1981); Vezina v. Nautilus Pools, Inc., 27 Conn. App. 810, 822 (1972). In general terms, this means that where a conflict as to method exists, the one resulting in the smaller amount of damages should be chosen. Levesque v. D M Builders, Inc., 170 Conn. 177, 183 (1976). In this case, it seems obvious and both parties tend to agree that the proper method of ascertaining damages is the reasonable cost of completing the pool. Pursuant to this method, the court must determine whether the plaintiff's post-breach expenditures were reasonable in cost and whether they were within the scope of the contract. The plaintiff's damages are the difference between the approved expenditures and the unpaid portion of the contract price. Annot. 41 A.L.R. 4th 131, 155-56. See Bruni v. Behnke,144 Conn. 181, 183 (1956).
The work done by Clearwater Pools, Inc. as the successor-contractor is found to have been within the scope of the original contract. Parenthetically, the court finds that the original oral contract only provided for one heater as indicated in the subsequent agreement between the plaintiff and Clearwater.[3] A different conclusion, however, is reached as to reasonableness of cost. The general manager of Clearwater Pools gave the following amounts for the cost of labor and the various items furnished in completing the work: acid wash $700.00, plaster $4500.00, maintenance kit $220.70, 1-1/2 H.P. blower $173.83, oil heater $3,800.00, vacuum $650.00, plumbing labor $600.00, 2 spa lights $375.43, conduit $10.00 and labor $899.99. The total of these sums is $11,933.96.
No explanation of how the costs were ascertained or why the price charged by Clearwater Pools reached $12,500.00 was supplied other than the general manager's statement that "We mark up items that we sell." In the absence of more complete information, the court can only conclude that $11,933.96 was the reasonable cost of CT Page 8634 finishing the work. From the $11,933.96, the $4,000.00 unpaid balance on the original contract must be subtracted, so that the damages sustained by the plaintiff from the defendant's breach of contract is $7,933.96. The plaintiff is, of course, also entitled to reimbursement for the $3,144.42 he paid to O G Industries, Inc. on the defendant's behalf. Total damages for the plaintiff are therefore $11,078.38.
 IV.
Recent decisions hold that in cases involving construction contracts, a contractor's conscious and intentional departure from contract specifications will not necessarily result in a total rejection of the right to recover from the owner in an action on the contract. Aetna Casualty Surety Co. v. Murphy, 206 Conn. 409,414 (1988). In Simonetti v. Lovermi, 15 Conn. App. 722, 725
(1988), a contractor, whose conduct promoted an incident that resulted in his being ordered to leave the site and a termination of the contract, was allowed to recover in quasi contract[4] on a theory of unjust enrichment for work he had substantially performed.
The defendant is entitled to recover for the extra work performed prior to the breach of contract. No claim was made by the plaintiff that the defendant's charges were unreasonable. The court notes, however, that there are two unexplained requests for "footing removals", one for $300.00 and the second for $500.00. The defendant's testimony was that one large mass of concrete was found adjacent to the old pool and was removed. Accordingly, $500.00 is subtracted from the $1,875.00 damages sought by the counterclaim.
 V.
Judgment in the amount of $11,078.38 is awarded to the plaintiff on the complaint. Judgment in the amount of $1,375.00 is awarded to the defendant on the counterclaim.
Barnett, J.