[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff paving contractor brought an action in three counts against the defendant, Anderson Ridge Associates, a subdivider, arising from a road construction contract between the CT Page 8146 parties. In the first count, the plaintiff seeks payment of the balance due on the contract of $13,250. In the first and second counts, the plaintiff seeks payment for extra work in the amount of $40,432.82 performed for the defendant beyond the scope of the contract. In the third count, the plaintiff seeks a judgment foreclosing the mechanic's lien securing payment of the amounts due in the first and second counts. The total amount claimed by the plaintiff is $53,682.82 plus attorney's fees and interest.
In its answer and special defenses, the defendant (1) denied that any balance was due on the contract due to the plaintiff's breach of contract; (2) asserted that no amount is due for extra work as all claimed as extra work was within the scope of the "fixed price" contract; (3) claimed that even if the contract was not for a fixed price, it was not responsible for the extra work as the work was done without written change orders or without authorization.
In its setoff and counterclaim, the defendant asserted that the plaintiff (1) breached the contract by not completing the road in a timely fashion and failing to complete the road in a workman like manner; (2) defrauded the defendant to make payments not due the plaintiff; (3) violated the Connecticut Unfair Trade Practices Act and filed an invalid lien on the defendant's property.
On or about March 25, 1988, the plaintiff submitted a bid to construct a road in a recently approved subdivision in Sherman, Connecticut. The bid specifications and price were based upon engineering plans, known as the Rogers' Plans, provided to the plaintiff on defendant's behalf, which plans had been approved by the Town of Sherman as a component of the subdivision approval. Despite this background, these plans were never referenced in or attached to the ultimate written contract which the parties signed.
After that bid submission, the plaintiff entered into contract negotiations with Fred Kleinberg, a lawyer and partner of the defendant, Anderson Ridge Associates. Mr. Kleinberg provided Mr. Kelly with a draft contract rider which contained language that the scope of work under the contract would include "minor changes required by authorities that have jurisdiction." Mr. Kelly requested that the provision be removed from the rider as he would not be responsible for such changes. The provision was deleted from the final contract. In spite of the fact that CT Page 8147 the provision making Kelly responsible for minor changes was deleted from the final contract, the defendant maintains that the contract requires Kelly to bear the cost of all changes ordered by the Town as the contract was a "fixed price, turnkey" contract.
There is no language in the contract that the plaintiff would build the road on a "fixed price, turnkey." However, the defendant relies on paragraphs 2 and 3 of the rider to the contract, requiring that:
 2. G.H. Kelly Son (the `Contractor') shall be responsible for complying with all applicable laws, ordinances, rules, regulations and the like relating to its work, including all requirements set forth on the annexed Addendum to Sherman Island Wetlands Application (`Addendum'); however, the owner shall be responsible for paying all fees for all necessary permits customarily paid for by an owner. All labor and materials required to complete the work described on the addendum (including without limitation the driveway work, sedimentation basin and pond) shall be performed and supplied by the Contractor.
 3. All work and materials performed and supplied by the Contractor will meet or exceed all applicable specifications and requirements of all governments and agencies having jurisdiction, including without limitation the Town of Sherman, the State of Connecticut, the Planning Zoning Commission, the Inland Wetlands and Water Courses Commission, and the Board of Selectmen; Contractor agrees to keep all such agencies currently informed as to the progress of its work.
The court rejects the contention that the contract was for a fixed price or a turnkey type of job. First, the contract which was drawn by the plaintiff did not use those terms. Second, to the extent there is any ambiguity, it must be construed against the party who drafted the agreement, in this case the defendant which drafted two of the three pages of the agreement.Sturman v. Socha, 191 Conn. 1, 9 (1983). Third, what was the basis of the bargain, if not the Rogers' Plans? Since the contract contained almost no specifications, how could the plaintiff know what was to be built and how and where it was to be built if not by reference to the Rogers' plans which were given to him as the basis from which he was to make his initial bid. Fourth, in determining the intent of the parties to the agreement, it defies logic that despite the fact that the plaintiff negotiated out a provision which would have left the CT Page 8148 plaintiff contractor responsible for "minor" changes required by the Town of Sherman, the parties intended that he would still be liable at his expense to bear the cost of any major changes required by the Town of Sherman. This court observes that the so-called Rogers' Plans are detailed, plotting the location of the roadway and subdivided lots and the elevations of the roadway. These plans were never referred to in the contract of the parties but were shown to the plaintiff before he made his first proposal to bid the job. The contract provides that "any alterations or deviations from the above specifications involving extra costs will be executed only upon written orders, and will become an extra charge over and above the estimate." The defendant does not concede that many of the "extras" were outside the contract scope but claims that the plaintiff cannot recover for them, in any event, because the orders for them were not in writing. The court finds that no written change orders were requested by the defendant or made out for the bulk of the extra work performed and billed during the course of the project. "Provisions in a written contract requiring written orders for changes in the work or for extra work may be waived by the parties so that the owner becomes liable for changes or extras done by oral direction." Von Langendorff v. Riordan,147 Conn. 524, 528. By their course of conduct, the parties waived their right to written change orders. "[T]he provisions of a written contract can be waived by a subsequent oral agreement."General Electric Supply Co. v. SNETCO, 185 Conn. 583,604. Direction for the performance of work not called for by their contract has sometimes been interpreted as a waiver of the requirement for written approval. Wexler Construction Co. v.Housing Authority, 144 Conn. 187, 193. "[T]he parties to a written contract . . . are as free to alter it after it has been made as they were to make it . . . . [Citations omitted.] To this end oral agreements will be as effective as written ones. [Citation omitted.] And implied agreements satisfactorily established will have all the force of express ones."O'Loughlin v. Poli, 82 Conn. 427, 432. "`[T]he parties to a written contract . . . are as free to alter it after it has been made as they were to make it, and all attempts on their part by its terms to tie up their freedom of dealing with each other will be futile.' . . . . [A]nd hence the general rule is stated to be that, despite a provision in the contract that it may not be changed except in writing, a parol agreement modifying its terms will be given effect." Blakeslee v. WaterCommissioners, 121 Conn. 163, 182. "An existing contract may be modified or abrogated by a new contract arising by implication CT Page 8149 from the conduct of the parties." Malone v. Santora,135 Conn. 286, 292. See Gyro Brass Mfg. Corporation v.United Automobile Workers, 147 Conn. 76, 80; Hess v.Dumouchel Paper Co., 154 Conn. 343, 348. "In order to prove a contract has been modified, the party asserting the modification must show mutual assent to its meaning and conditions." First Hartford Realty Corporation v.Ellis, 181 Conn. 25, 33. "Whether the parties intended to modify their contract is a question of fact." Three S.Development Co. v. Santore, 193 Conn. 173, 177-78. The court finds that they did so by engaging in a course of conduct which did not require written change orders for extra work done by Kelly.
The court will take up the various opposing contentions of the parties and make its findings as to just what did or did not constitute extra work in its findings set out in the body of this opinion.
 I
The court will take up the first claim for extra work involving blasting. In May, 1988, boulders in the road right-of-way were unearthed which required removal. Mr. Kaplan orally authorized the use of S-mite, a blasting alternative. When that did not work, Mr. Kaplan authorized blasting of the rock. Kelly Company drilled the blasting holes. Mr. Myron Kaplan testified his understanding that the contract excludes rock removal from the contract price. And so it does. However, Mr. Kaplan asserts that he had only authorized up to $1,000 to be expended. The court does not find proved the defendant's assertion that a maximum of $1,000 was finally put on the work. The court finds credible Mr. Kelly's assertion that Mr. Kaplan of the defendant partnership authorized and agreed to pay the reasonable cost for the work. The plaintiff seeks $4,090 for this work broken down as follows:
 32 hours air compressor at $45 $1,440 64 hours labor at $25 1,600 S-Mite materials 400 blasting 650 ------ $4,090
The court finds that sum reasonable and that the plaintiff is CT Page 8150 entitled to recover that of the defendant.
 II
The court will now turn to plaintiff's land clearing claims. The plaintiff also seeks $9,825 payment for land clearing, some of which he contracted out to Kelly Tree Co. run by Mr. Galen Kelly, Kelly's brother.
This claim involves monies which are separate and apart from any necessary tree clearing required to build the road.
The defendant, acting by Myron Kaplan and Kevin Keenan, the project manager, requested the plaintiff to undertake what Mr. Kaplan described as "enhancement" work. Mr. Kaplan requested that Kelly clear several trees from the lower side of the new road. Mr. Kaplan's own notes reflect that he was informed by Kelly that the work would be extra work not within the contract. Mr. Kaplan's own notes also reflect Kelly's estimate for the extra work to cost $750. For that extra work, $750 was billed by Kelly Tree Co.
Mr. Kaplan's notes of June 8, 1988 indicate that Mr. Kelly quoted a price of $750 per day for additional land clearing work beyond the scope of the contract. On June 23, and 14, 1988, Kelly Tree Co., at Mr. Keenan's request, cleared pine trees and scrub growth along a fence line on the upper side of the road adjacent to "Block's field." While Mr. Keenan testified that he recalled the work, he claimed that it was within the roadbed. By late June, 1988, the roadbed had long since been excavated. That work is reflected as the second charge, $1,125, by Kelly Tree Co. for land clearing.
Mr. Kaplan's notes of July 8, 1988, indicate a meeting at the subdivision with Becky Thornton, a landscape architect. The notes indicate that thinning, debris clearing and brushhogging "enhancement" of several lots was contemplated.
Mr. Kelly's testimony is credible that shortly after July 8, 1988, Mr. Kaplan authorized him to retain Kelly Tree Co. to do one day's cleanup work on the subdivision to see what results the work would produce in enhancing the look of the lot to attract buyers. That work is reflected as a charge of $750 for one day's work by Kelly Tree Co. on July 18, 1988. CT Page 8151
Thereafter, Mr. Kaplan met Mr. Kelly at the subdivision on July 25, 1988. That meeting is memorialized in Mr. Kelly's Date Book. Mr. Kaplan expressed his pleasure with the "enhancement" work and authorized the plaintiff to do additional cleanup work. The plaintiff's subcontractor, Kelly Tree Co., commenced that work July 26, 1988 and charged $4,200 for its work through August 3, 1988.
The balance of the land clearing work, $3,750, related to work done on the back driveway to Lots 6, 7 and 8. Mr. Galen Kelly testified that the tree contractor was required to clear the driveway area of trees on three occasions because the project manager, Kevin Keenan, improperly staked the driveway. Myron Kaplan denied that the driveway was improperly staked. The court finds for the plaintiff on that issue.
The court finds that for that land clearing work, the plaintiff is entitled to recover the $9,825 he seeks.
 III
There is also a claim for extra work required to install subsurface drainage under Wimisink Road land to ensure proper drainage behind a retaining wall due to orders of First Selectman Grant of Sherman. The court finds that there was a plan for subsurface drainage shown on the Rogers' Plans. Of the two maps prepared by Rogers, the Plan and Profile Map shows deep sumps placed along Wimisink Road below the storm water catch basins which are also plotted on the map. Additionally, the plan and profile shows a catch basin to be located in the adjacent town street, Anderson Road. According to the plan and profile "proposed C.B. to be field located per Board of Selectmen." Additionally, there was a detailed drawing of a reinforced concrete retaining wall. Additionally, there was detail sedimentation basin where a watercourse went under Wimisink Road near the cul de sac. Field conditions prompted the Town's order to install additional drainage beyond that shown on the Rogers' Plans. The contract between the parties provided in paragraph 2 of the addendum that "G. H. Kelly Son (the "contractor") shall be responsible for complying with all applicable laws, ordinances, rules regulations and the like relating to its work . . . ." Page one of the April 26, 1988 contract between the parties provided that the contractor would complete "construction of Wimisink Road for Clover Ridge subdivision in Sherman, CT." In addition, paragraph 3 of the rider to the contract between the CT Page 8152 parties provided:
 3. All work and materials performed and supplied by the Contractor will meet or exceed all applicable specifications and requirements of all governments and agencies having jurisdiction, including without limitation the Town of Sherman, the State of Connecticut, the Planning Zoning Commission, the Inland Wetlands and Water Courses Commission, and the Board of Selectmen; Contractor agrees to keep all such agencies currently informed as to the progress of its work.
The court finds that the First Selectman determined that proper road construction in light of the field conditions and the Town of Sherman specifications and requirements required installation of additional subsurface drainage under Wimisink Road. By virtue of its agreement with the defendant to build a road "in a good and workmenlike [sic] manner" in accordance with Town requirements, the plaintiff was obligated to provide this drainage as a part of its contract. The real question is not whether Kelly was obligated to do the extra drainage work, but whether the defendant or Kelly was obligated to absorb the cost.
There was a map and a plan and profile with drainage details shown on it (the so-called Rogers' Plans) which were the basis on which Kelly bid, and these plans detailed where Wimisink Road was to be built and what drainage appurtenances Kelly was bidding on. The First Selectman demanded that the work as shown on the plans be altered or changed from what the Rogers' Plans detailed. In the court's opinion, there is then a basis for it to find that it was "extra work" above and beyond what was bargained for, entitling the plaintiff Kelly to payment above and beyond the contract price for its installation.
When one looks at the Town of Sherman Road construction ordinance which was one of the applicable governmental requirements that applied to the construction of Wimisink Road, it is plain and obvious that both the plaintiff and the defendant were on notice that the Town would require drainage as an integral part of the road construction. Paragraph 14 and 15 of the road construction ordinance make detailed references to the manner in which underdrains, culverts, retaining walls and other drainage structures are to be constructed. Paragraph 14 of the ordinance expressly provides that "[s]ufficient pipe shall be installed within any subdivision to carry existing water courses and to drain the proposed roads." When the road was cut in, CT Page 8153 additional water was required to be carried off. The court therefore finds that the plaintiff is not entitled to $15,477.83 as an "extra" to be paid by the defendant for the subsurface drainage required by the Town of Sherman, which altered the manner in which the plan and profile had proposed doing that work.
 IV
Plaintiff Kelly also asserts a claim for driveway work.
This claim involves interpretation of item 6 of the agreement between the parties and paragraph 5 of the contract rider. Item 6 provides that the scope of the work includes "Boxout driveways (3 each). Paragraph 5 of the rider provides that:
 5. The work shall include roughing out three (3) shared driveways selected by owner, preparing same for gravel and placing a thin layer of gravel on each driveway; such work to be done to a point sufficient to provide access ways to all lots. Upon completion, all nine (9) lots will have access directly or through such boxed driveways to the road. Contractor, if requested, shall also rough out the driveways on each lot.
This agreement is ambiguous since the word boxing
was lined out of the first sentence of paragraph 5 and replaced with the printed word "roughing." It was not changed elsewhere in that paragraph or on the first page of the contract. The plaintiff now contends that his only contractual obligation was to "rough" the driveways, only making them passable for vehicles. Boxing would require additional removal of the topsoil and evening out the subsurface. Although the parties were sloppy in not excising the words "box out" elsewhere in the contract, the court is satisfied that the words "roughing out", which were penned in, express the parties' true intent as to what was to be done.
Selectman Ken Grant ordered the defendant to do significant additional work on the upper driveway to Lot 9, due to field conditions encountered during the initial phase of the construction project. Because of the slope of the driveway, and the amount of water running out of the hillside at the upper driveway, the first selectman ordered the driveway slope reduced significantly from what was shown on the plans and that it be rip-rapped. The final work product is shown in photographs in CT Page 8154 evidence. To reduce the driveway slope, haul away the removed materials and install a new layer of gravel on the entrance to the upper driveway, Mr. Kelly charged $7,920. The charges are detailed as the first five items on the August 28, 1988 extras statement.
The balance of the driveway extra work claimed by Mr. Kelly, $3,120, relates to work done beyond 300 feet from the road on the rear driveway. Mr. Kelly and Myron Kaplan agreed that Kelly would construct three shared driveways to a depth of 250 to 300 feet into the lots. The reason the issue of driveway length was discussed prior to execution of the contract was that Mr. Kelly had only the engineering plans for the road, not the subdivision map, when he bid on the road construction project. Mr. Kaplan's own notes reflect the discussion with Kelly and Keenan on driveway length, and corroborate Mr. Kelly's understanding as to the length of the shared driveways he was intended to construct. The additional work done on the rear driveway beyond 300 feet from the road, as set forth on the extras statement, should be paid. The plaintiff is entitled to recover the $11,040 total billed for this work.
The claims of each party that the other should be responsible for the opponent's attorney's fees incurred in this lawsuit are denied. Matters were sufficiently in dispute here that the lawsuit had to be tried February 17, February 18, February 22, February 24, February 28, March 4, March 7, March 8 and March 9, 1994. The court is constrained to observe that the convoluted business dealings of the parties and their failure to draw a more clear and detailed contract initially and to document change orders as the project progressed, resulted in their controversy with one another and could have resulted in an even far longer trial had it not been conducted by two extremely well prepared, experienced attorneys who tried the case professionally with a view towards making efficient use of the court's time and limiting unnecessary expenses to their respective clients. Under these circumstances, the court finds that it is not warranted that attorneys' fees should be awarded against any party. Each party should pay his or its own attorney's fees.
For the same reasons, the court awards no prejudgment interest.
There was a contract balance unpaid of $13,250 on the original contract work. CT Page 8155
In its setoff and counterclaim, the defendant first asserts that the plaintiff breached the contract by not completing the road in a timely fashion and failing to complete the road in a workmanlike manner. The gist of the late completion assertion is that the plaintiff did not complete the road in the fall of 1988 as agreed but instead the road was completed at the end of the summer of 1989. The court finds that the road would not be completed in the fall of 1988 because the underground utility installation, which was the defendant's responsibility, was not completed until so late in December, 1988 that the Town of Sherman would not permit the last course of pavement to be applied and, because of a rainy spring, the Town would not permit work to continue until mid-May, 1989. Furthermore, remedial work was required due to winter and spring rain damage. Under these circumstances, the court does not find the plaintiff should be held responsible for delays in construction. The court, therefore, rejects the defendant's setoff and counterclaim arising out of failing to complete the basic road by December of 1988 and to put the final paving course down in early spring of 1989.
The defendant also claims that the defendant did not complete the road in a workmanlike manner. The plaintiff Kelly completed the road in such a manner that there were large seams where portions of the paved surface met other portions of it which had been paved at a different time. Portions of the road surface were uneven. That installation was not completed in the good and workmanlike manner which the contract required. To satisfy the Town of Sherman's requirements and get its road accepted, the defendant engaged the Waters Construction Company to resurface the road to seal the seams and level the surface. Cost of this remediation to the defendant was $13,737 which was paid for by defendant, Anderson Ridge, and for which it should have a setoff.
The defendant also claims credit of $1,360 for payments for corrective work to Michael Petterson, $2,926 to Beatty Construction, and $945.95 for extra supervisory services of Kevin Keenan. The court does not find that the defendant has proved its entitlement to these sums.
In light of the uncertainty and complexity of the case caused in part by the acts of both parties in executing the kind of contract which they did and in failing to write out and sign for additional work, the court cannot find that the detention of the CT Page 8156 money was so wrongful under the circumstances to justify the award of pretrial interest.
The plaintiff has made a claim for foreclosure of its mechanic's lien. Section 49-33(h) of the General Statutes provides that: "Any mechanic's lien may be foreclosed in the same manner as a mortgage." Foreclosure judgments are of two types in the State of Connecticut. The court enters a judgment of foreclosure by sale ordering the premises be sold at public auction where the likely equity of the party being foreclosed is so great that after payment to the foreclosing creditor and expenses of sale, a remaining sum from the avails of the sale can be returned to the owner of the equity. Where there is no equity, strict foreclosure is appropriate absolutely vesting title in the creditor as of a certain date if the owner-debtor does not redeem before the law day set by the court. Without evidence as to the value of the real estate, or whether there are any subsequent creditors or lienors, the court cannot enter judgment of foreclosure at this time and that claim is denied without prejudice.
Except as specifically found herein, as to all other claims, counterclaims and setoffs, and special defenses, the court does not find them proved.
In addition to the $4,090 due for rock removal, which was excluded under the contract, the court finds that the reasonable value of the other additional services and materials totalled $72,254.83, of which the defendant paid $35,912, leaving a balance due for extras of $36,342.83. Unpaid extras total $40,432.83 and the contract balance billed is $13,250. Those sums equal $53,682.83.
The court rules that the plaintiff is entitled to recover of the defendant the sum of $39,945, representing the rounded $53,682, less the $13,737 offset allowed.
Flynn, J.