**SELLAND PONTIAC—GMC, INC., Appellant,**

v.

**George KING, d.b.a. King's Superior Bus Sales, Respondent.**

No. C7–85–1682.

Court of Appeals of Minnesota.

March 25, 1986.

Paul A. Sortland, Fargo, N.D., for appellant.

Dennis W. Schurman, Detroit Lakes, for respondent.

Heard, considered, and decided by FORSBERG, P.J., and LANSING and RANDALL, JJ.

## OPINION

RANDALL, Judge.

Buyer, Selland Pontiac-GMC, Inc., sued seller, George King, for breach of contract. After a one-day bench trial the court granted judgment for King. The trial court denied Selland's motion for a new trial and/or amended findings of fact and conclusions of law and entered judgment. Selland appeals. We affirm.

## FACTS

Selland contracted with King (doing business as King's Superior Bus Sales) to buy four school bus bodies. The oral agreement made in April, 1983, was reduced to a writing dated May 12, 1983. King was to supply the bodies, which would be built on top of chassis provided by Selland. The written agreement indicates that the bodies would be manufactured by Superior Manufacturing, which was located in Morris, Manitoba. The written agreement contains no completion date. King was aware that Selland's customer needed the buses by late August for the start of the school year. The contract price was $47,660. The writing contained no escape clause excusing King's performance should his source of supply fail.

In reliance on the contract, Selland ordered four bus chassis from General Motors. They arrived at Superior's entry point in Pembina, North Dakota, in June and early July, 1983.

Superior went into receivership on July 7, 1983, and King learned of this on July 8. King informed Selland of the receivership on August 12. The parties do not agree on what happened afterwards. Selland claims that King assured Selland that the buses would be completed on time. King claims that Selland, fully advised of Superior's

status, decided to wait and see if Superior would come out of receivership able to supply and install the bus bodies. The trial court found that "[a]fter receiving notice of the receivership, Selland acquiesced to the delay in production."

The bodies were never manufactured. The Superior plant was operated by a new company from approximately late July to September or October. For some time after that, different individuals expressed interest in buying and operating the plant. Finally it was purchased, moved to Oklahoma, and it began production in 1985. Superior went out of business. In December, 1983, Selland's customer (Chief Auto Sales) cancelled their order. Selland sold the chassis at a loss.

### ISSUES

1. Were the trial court's findings clearly erroneous?

2. Did the trial court err in applying Minn. Stat. § 336.2-615 (1984)?

### ANALYSIS

*Findings*

■ On appeal this court will not set aside the trial court's findings unless they are clearly erroneous. *Peterson v. Johnston*, 254 N.W.2d 360, 362 (Minn.1977). Selland questions the trial court's finding that the contract identified Superior as King's supplier, and that the contract contemplated that the bodies would be manufactured by Superior. This finding is supported by the contract which states that Superior bus bodies were being sold.

■ Selland also questions the trial court's finding that it acquiesced in the delay when it became apparent that the buses would not be completed near the beginning of the school year. King's testimony indicates that from August 12, 1983, he notified Selland of all information relevant to Superior's production schedule and business status as it became known to him. The receiver continually negotiated with another company which operated the Superior plant for a short period. Selland did not cancel its order until December, 1983, and was in contact with both its customer and King throughout August and September. These facts indicate that reasons existed for Selland to wait and see whether the bodies would be produced. The trial court did not err in finding that Selland acquiesced to the delay.

### II.

*Application of § 336.2-615*

Except so far as a seller may have assumed a greater obligation and subject to the preceding section on substituted performance:

> (a) Delay in delivery or nondelivery in whole or part by a seller who complied with paragraphs (b) and (c) is not a breach of his duty under a contract for sale if performance as agreed has been made impracticable by the occurrence of a contingency the non-occurrence of which was a basic assumption on which the contract was made or by compliance in good faith with any applicable foreign or domestic governmental regulation or order whether or not it later proves to be invalid.

> \*   \*   \*   \*   \*   \*

> (c) The seller must notify the buyer seasonably that there will be delay or nondelivery \* \* \*.

Minn. Stat. § 336.2-615 (1984). Supply of Superior bus bodies was a basic assumption on which the contract was made. These became impracticable to supply when Superior ceased manufacturing.

■ Appellant argues that the trial court improperly applied § 336.2-615. In *Barbarossa & Sons v. Iten Chevrolet, Inc.*, 265 N.W.2d 655 (Minn.1978) the supreme court applied § 336.2-615 and affirmed judgment for the buyer where the manufacturer's supply of seller's order was not a basic assumption of the contract and the contract contained no escape clause. The manufacturer, General Motors, was not mentioned in the contract as the source of supply. General Motors had cancelled several or-

ders at this time due to a shortage. The court stated:

> A partial failure of a seller's source of supply generally has been treated as a foreseeable contingency, the risk of which is allocated to the seller absent a specific provision to the contrary in the contract.

*Id.* at 659–60 (citations omitted).

The trial court's finding of no breach of contract here is consistent with *Barbarossa's* holding that the contract was breached under § 336.2–615. Here the seller's supplier was specified in the contract. Superior was also specified in King's price quotation to Selland. In *Barbarossa* the supplier did not cease to manufacture, but simply cancelled the orders of some of its dealers. Here both parties testified that they had no knowledge of Superior's questionable financial circumstances when they contracted and King did not expressly assume the risk of Superior's ceasing production.

Appellant claims that the trial court erred in concluding that King gave seasonable notice of nondelivery. The trial court found that King's August 12 notification of the receivership and King's passing on all information as he received it constituted seasonable notice of delay *and* nondelivery. Whether or not there was seasonable notice of nondelivery is an issue of fact, and we will not disturb the trial court's assessment of the credibility of conflicting testimony. We are particularly reluctant to disturb that finding on review where there is some support in the record.

We agree with appellant that notice of delay does not necessarily constitute notice of nondelivery. However, the facts of this case indicate that King did give seasonable notice of nondelivery. Although King never stated specifically that he would not deliver, he testified that he truthfully relayed information about the situation as he received it. The record indicates that Selland evaluated this information and may have investigated the situation in Morris itself. Selland acquiesced in King's evaluation of the situation.

One commentator approves of King's actions in a situation where a seller must decide whether to give notice of delay or notice of nondelivery:

> The seller should be protected if he gives seasonable notice of the delay and indicates in good faith that he is uncertain as to whether the delay will ripen into nondelivery and that he will keep the buyer informed of events as they unfold. * * [As] soon as the seller knows that nondelivery will occur he must notify the buyer of this fact.

3 W. Hawkland, Uniform Commercial Code Series 221 (§ 2–615:13) (1984). Although King did not ultimately advise Selland of nondelivery, this was not necessary under the facts of this case where Selland cancelled the contract before such notice could be given.

## DECISION

The trial court did not clearly err in finding that the contract contemplated that the bus bodies would be manufactured by Superior and that Selland acquiesced to the delay in delivery. The trial court did not err in its application of Minn. Stat. § 336.2–615.

Affirmed.