RAYMOND ROY *v.* STEPHEN PONTIAC-CADILLAC, INC.
(6036)

BORDEN, SPALLONE and FOTI, Js.

Argued April 7—decision released July 5, 1988

*Benjamin F. Cardinez,* for the appellant (plaintiff).
*Terrence J. Molinari,* for the appellee (defendant).

BORDEN, J. The plaintiff appeals from a judgment for the defendant in this suit arising out of the non-delivery of a truck. The plaintiff alleged a breach of contract and a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a through 42-110q. The dispositive issue is whether the trial court erred in concluding that the defendant's peformance under the contract between the parties was excused by virtue of the doctrine of impossibility of performance. We find error in part.

The court found the following facts. On November 7, 1985, the plaintiff agreed to purchase a new motor vehicle from the defendant, a motor vehicle dealership. The vehicle was described in the contract as a three-quarter ton GMC truck with a 350 V-8 engine, standard four-speed transmission, AM radio, painted step-bumper, power steering and a C-Bar. The vehicle was not in stock and had to be ordered from the manufacturer.

On December 5, 1985, the manufacturer notified the defendant that the vehicle as ordered was not available because a three-quarter ton truck with a 350 V-8 engine required a heavy duty package, which included

heavy duty power brakes, extra capacity rear springs, a heavy duty stabilizing bar, and heavy duty front and rear shocks. The addition of a heavy duty package to the vehicle order would have increased the cost charged by the manufacturer.

The defendant notified the plaintiff of this problem and offered the plaintiff three options: (1) to order the heavy duty package at a reduced price; (2) to take the vehicle as ordered but with a smaller engine which did not require any heavy duty equipment; or (3) to receive a full return of his deposit money, with neither party having any further obligation.

The plaintiff rejected these options and notified the defendant that he considered the defendant to have repudiated the contract. Thereupon, the defendant returned the plaintiff's deposit. The court found that the defendant acted in good faith at all times with respect to the dealings between the parties.

The following month, the plaintiff purchased a three-quarter ton Chevrolet truck with a 350 V-8 engine from a different dealership. That truck was equipped with the heavy duty package, and with two additional items not included in the contract with the defendant. The plaintiff paid more for that truck than he had agreed to pay the defendant for the GMC truck. The court concluded that the defendant's performance was excused under the doctrine of impossibility of performance because the only performance which was possible by the defendant would have been essentially different from the performance promised. Under the circumstances of this case, however, this conclusion was erroneous.

## I

"A modern statement of the impossibility doctrine appears in a leading case. . . . 'It is now recognized that "[a] thing is impossible in legal contemplation when it is not practicable; and a thing is impracticable when

it can only be done at an excessive and unreasonable cost." [Citations omitted.] The doctrine ultimately represents the ever-shifting line, drawn by courts hopefully responsive to commercial practices and mores, at which the community's interest in having contracts enforced according to their terms is outweighed by the commercial senselessness of requiring performance. When the issue is raised, the court is asked to construct a condition of performance based on changed circumstances, a process which involves at least three reasonably definable steps. First, a contingency—something unexpected—must have occurred. Second, the risk of the unexpected occurrence must not have been allocated either by agreement or by custom. Finally, occurrence of the contingency must have rendered performance commercially impracticable.' " J. Calamari & J. Perillo, Contracts (3d Ed.) § 13-1, p. 537, quoting *Transatlantic Financing Corporation* v. *United States,* 363 F.2d 312, 315 (D.C. Cir. 1966); see also *Hess* v. *Dumouchel Paper Co.,* 154 Conn. 343, 349–52, 225 A.2d 797 (1966).

The transaction in this case involved the sale of goods. It is therefore controlled by our statutory codification of the provisions of article 2 of the Uniform Commercial Code (UCC). See General Statutes §§ 42a-2-101 through 42a-2-725. General Statutes § 42a-2-615 codifies § 2-615 of the UCC and provides in relevant part: "Except so far as a seller may have assumed a greater obligation . . . nondelivery in whole or in part by a seller . . . is not a breach of his duty under a contract for sale if performance as agreed has been made impracticable by the occurrence of a contingency the nonoccurrence of which was a basic assumption on which the contract was made . . . ." This provision has yet to be applied in any published decision by a court of this state. We therefore look to the interpretation given § 2-615 of the UCC in other jurisdictions and to authoritative commentary on it.

Section 2-615 of the UCC codifies the modern approach to the common law doctrine which is variously termed "impossibility," "impracticability," or "frustration of purpose." See 2 Restatement (Second), Contracts § 261; see also *Hess* v. *Dumouchel Paper Co.*, supra, 349–52. The theory underlying the approach taken by the UCC and followed by the restatement is that "the obligor is relieved of his duty because the contract, having been made on a different 'basic assumption,' is regarded as not covering the case that has arisen. It is an omitted case, falling within a 'gap' in the contract." 2 Restatement (Second), Contracts, Introductory Note to Chapter 11, p. 311.

"Three elements must be proven before excuse becomes available under § 2-615: (1) the seller must not have assumed the risk of some unknown contingency; (2) the nonoccurrence of the contingency must have been a basic assumption underlying the contract; and (3) the occurrence of that contingency must have made performance commercially impracticable." *Iowa Electric Light & Power Co.* v. *Atlas Corporation*, 467 F. Sup. 129, 134 (N.D. Iowa 1978), rev'd on other grounds, 603 F.2d 1301 (8th Cir. 1979), cert. denied, 445 U.S. 911, 100 S. Ct. 1090, 63 L. Ed. 2d 327 (1980). Whether the nonoccurrence of a contingency was such a basic assumption involves a judgment as to which party assumed the risk of its occurrence, a determination to be made in light of all the circumstances, including the terms of the contract. 2 Restatement (Second), Contracts, Introductory Note to Chapter 11, p. 311.

The cases and commentary suggest that "[t]he applicability of the defense of commercial impracticability [under § 2-615] turns largely on foreseeability. The relevant inquiry is whether the risk of the occurrence of the contingency was so unusual or unforeseen and the consequences of the occurrence of the contingency so severe that to require performance is to grant

the buyer an advantage he did not bargain for in the contract. If the risk of the occurrence of the contingency was unforeseeable, the seller cannot be said to have assumed that risk. If the risk of the occurrence of the contingency was foreseeable, that risk is tacitly assigned to the seller. The seller's failure to provide a contractual excuse against the occurrence of a foreseeable contingency may be deemed to be an assumption of an unconditional obligation to perform. Phrased somewhat differently, if a contingency is foreseeable, the section 2-615 defense is unavailable because the party disadvantaged by the fruition of the contingency might have contractually protected itself . . . ." (Citations omitted.) *Waldinger Corporation* v. *CRS Group Engineers, Inc.,* 775 F.2d 781, 786 (7th Cir. 1985); see also *Mishara Construction Co.* v. *Transit-Mixed Concrete Corporation,* 365 Mass. 122, 129, 310 N.E.2d 363 (1974); *Barbarossa & Sons, Inc.* v. *Iten Chevrolet, Inc.,* 265 N.W.2d 655, 658–61 (Minn. 1978); J. White & R. Summers, Uniform Commercial Code (2d Ed.), pp. 129–31.

These rules apply whether the contingency occurs after the agreement was made—so-called "supervening impossibility"—or the contingency exists at the time of the agreement—so-called "existing impossibility." J. Calamari & J. Perillo, supra, § 13-11. One additional requirement, however, applies when a party claims a contract is void due to existing impossibility: "[T]he party seeking to use the doctrine must show that he did not know *or have reason to know* the facts that made performance impossible." (Emphasis added.) Id.; 2 Restatement (Second), Contracts § 266 (1) and comment a.

This case presents a situation of existing impossibility. This was not a case where the manufacturer changed its product line or product specifications after the dealer agreed to deliver a vehicle using then cur-

rent product information. Cf. *Selland Pontiac-GMC, Inc.* v. *King,* 384 N.W.2d 490 (Minn. App.1986) (manufacturer of bus bodies to be supplied under contract went out of business after parties reached agreement). In this case, the manufacturer's product line was the same at the time of the contract as it was when the defendant was informed that the order could not be filled. Although the fact that the manufacturer would not produce the vehicle as ordered did not actually become known to the parties until after the agreement was made, the condition of impossibility existed at the time of agreement.

The question, then, is whether the defendant had "reason to know the facts that made performance impossible." J. Calamari & J. Perillo, supra. The defendant's GMC manager, who reviewed and approved the parties' agreement on behalf of the defendant, testified that the defendant had publications from the manufacturer which, if consulted, would have disclosed the need to add a heavy duty package to the truck as ordered in order to obtain delivery from the manufacturer.[1]

---

[1] The transcript reveals the following exchange regarding this subject:

"The Court: I think the question here is, is that did you have information in your agency there that this truck was not available?

"The Witness: Yes.

"The Court: So actually, you could have known at that point? You didn't have to wait for the factory—

"The Witness: I got an answer back from the factory that—

"The Court: I know you did. But couldn't you have known that? Now, usually, when you go in there, into a car dealer, the fellow who's selling you the car or whoever, he knows what you can have or what you cannot have, with what the individual owner is picking out. That with certain things you want, you have to get this, and you have to get that. Now, didn't you know at this point, that if he wanted a 350 engine, you couldn't get it for him?

"The Witness: I didn't know that at that point, no.

"The Court: Yes, but did the agency know it?

"The Witness: No, they didn't.

"The Court: Didn't you have books there? Don't you have—

"The Witness: I have books there.

"The Court: *You don't have to wait for the factory to let you know that you couldn't have it?*

Under these circumstances of undisputed testimony by the defendant's agent, the defendant had reason to know and should have known that GMC would not build the truck which the defendant agreed to deliver without certain heavy duty equipment. Because the defendant was in a position to know that performance would require additional cost, it must be held, as a matter of law, to have "assumed a greater obligation" to perform the contract, and was not entitled to be excused from performing that obligation pursuant to General Statutes § 42a-2-615.[2]

## II

The plaintiff also claims that the court erred in rejecting his CUTPA claim, and in refusing to award him punitive damages and attorney's fees in connection with his CUTPA claim. The court specifically found that the defendant acted in good faith at all times relevant to the transaction and that the defendant had not committed any unfair or deceptive acts or practices within

"The Witness: *Yes, you're right.*
"The Court: You had to wait for the factory?
"The Witness: No, no. Yes, you're right. *It was in the book that we did have.*

\* \* \*

"The Court: *The agency, if you had looked it up someplace—you have these books—you would have known, if you had actually looked it up. Isn't that true?*
"The Witness: *Yes.*" (Emphasis added.)

[2] In its brief, the defendant claims two alternative grounds upon which the judgment of the trial court may be affirmed. The defendant argues that the parties' contract was duly rescinded, first, because the contract was the result of a mutual or unilateral mistake excusing performance, and, second, because the parties agreed that the contract was rescinded. These arguments are without merit. The claim of mutual mistake was factually rejected by the trial court. That factual determination is not clearly erroneous. The claim of unilateral mistake was not presented to the trial court. We therefore do not review it. The claim that the parties agreed to rescind the contract was also factually rejected by the trial court. That determination is not clearly erroneous.

the meaning of General Statutes § 42-110b. These findings are not clearly erroneous and are fatal to these claims of error.

## III

The plaintiff sought the following items of damages for breach of contract: (1) consequential damages pursuant to General Statutes § 42a-2-715 (2) in the form of loss of use of the vehicle and loss of eligibility to claim an investment tax credit for the 1985 tax year; and (2) "cover" damages pursuant to General Statutes §§ 42a-2-712 and 42a-2-715 (1). The plaintiff claims that the court erred in failing to award these items of damages.

Although the court found that the defendant was not liable for breach of contract, the court nonetheless addressed and rejected the plaintiff's claim for consequential damages. The court's rejection of the plaintiff's claimed loss of an investment tax credit in 1985 and of his claimed loss of use of the vehicle was not clearly erroneous. The plaintiff's challenge to this conclusion of the court amounts to an attempt to have us retry the facts found by the trial court. *Carr* v. *Mehta,* 14 Conn. App. 808, 540 A.2d 725 (1988) (per curiam).

The court did not, however, address the proper calculation of "cover" damages pursuant to General Statutes §§ 42a-2-712 and 42a-2-715 (1), because it erroneously excused the defendant from liability on the contract. The proper measure of such damages in this case requires the resolution of a factual dispute between the parties. We must, therefore, remand the case to the trial court for further proceedings on this issue.

There is error in part, the judgment in favor of the defendant on count one, the breach of contract claim only, is set aside and the case is remanded with respect

to that count for further proceedings consistent with this opinion.

In this opinion the other judges concurred.