[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: WHETHER EVIDENCE SUFFICIENT TO GRANT MOTION FOR SUMMARY JUDGMENT ON ISSUE OF IMPOSSIBILITY OF PERFORMANCE AND TIME BAR
As alleged in the complaint, this action arises out of a property insurance policy issued by the defendant, New London County Mutual Insurance Company, to the plaintiff, James McMahon. On or about December 23, 1996, the plaintiff's property was damaged in a fire. The plaintiff filed his complaint on January 5, 1998, alleging that the defendant "failed to pay the Plaintiff fully for damages to his property due to the fire loss. . . ." The defendant filed an answer and an amended answer admitting that the policy was in effect when the loss occurred. The defendant's amended answer includes two special defenses: accord and satisfaction, based on the plaintiff's acceptance of "a payment in full and final settlement of his claim," and a claim that the plaintiff's action is barred by failure to comply with the 180 day period for filing a supplemental claim.
The defendant has filed a motion for summary judgment and memorandum in support thereof. Although the defendant, in its memorandum, refers to four documents as exhibits thereto, only one document, the insurance policy, was actually attached to the memorandum. The defendant did not file any affidavit in support of its motion. The plaintiff has filed a cross motion for summary judgment and objection to the defendant's motion for summary judgment, accompanied by his memorandum, an affidavit and several exhibits. CT Page 11873
"Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to nonmoving party . . . .Although the party seeking summary judgment has the burden of showing the nonexistence of any material face. . . a party opposing summary judgment must — substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . ." (Citation omitted; internal quotation marks omitted.) Maffucci v. Royal Park Ltd. Partnership, 243 Conn. 552,555, 707 A.2d 15 (1998).
In this case, the insurance policy covered a single family dwelling owned by the plaintiff. This dwelling was damaged in the fire. Pursuant to the replacement provision of the policy, under certain circumstances, an insured may recover the cost of replacement of a dwelling, without a deduction for depreciation. The parties agree that the plaintiff submitted a claim to the defendant in a "Proof of Loss", document[1] and that pursuant to this claim, the defendant paid the plaintiff the actual cash value of the loss, $67,807.32. This amount represented the full cost of replacement, with a deduction for depreciation. The parties also state that the plaintiff submitted a Statement As To Full Cost of Repair or Replacement Under the Replacement Cost Coverage (Statement).[2] This document contains a paragraph requiring that supplemental claims be filed within 180 days of the date of loss.
The central issue between the parties is whether the plaintiff is entitled to recover the depreciation withheld by the defendant. The specific issues raised by the parties in their motions for summary judgment are whether the plaintiff complied with a particular condition of the replacement provision of the policy or whether his compliance was excused pursuant to the doctrine of impossibility, and whether the plaintiff complied with the 180 day claim filing provision in the Statement. The defendant claims that the plaintiff failed to comply with one or both of these provisions and thus cannot recover the depreciation. The plaintiff argues that he complied with both provisions, or, in the alternative that he was excused from so doing, and that the defendant is thus required to pay the depreciation. CT Page 11874
Replacement Provision
The issue which the defendant raises regarding the replacement provision is whether the plaintiff has completed replacement. The defendant argues that pursuant to an express condition of the replacement provision, the plaintiff is barred from receiving more that the actual cash value of the dwelling until actual replacement of the dwelling is complete. For this argument, the defendant focuses on paragraph 5(b)(4)(a) in the Conditions section of: the policy, which states: "We will pay no more than the actual cash value of the damage unless: (a) actual repair of replacement is complete." The defendant contends that replacement is not complete and that the plaintiff is therefore not entitled to recover the depreciation.
The plaintiff counters that he complied with the condition of the replacement provision by entering into a contract (purchase contract) to purchase a dwelling elsewhere. In the alternative, the plaintiff argues that he is excused from complying with the replacement provision pursuant to the doctrine of impossibility.
"An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the policy . . . The policy words must be accorded their natural and ordinary meaning . . . [A]ny ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy . . . This rule of construction may not be applied, however, unless the policy terms are indeed ambiguous." (Citations omitted; internal quotation marks omitted.) Stephan v. Pennsylvania General Ins.Co., 224 Conn. 758, 763, 621 A.2d 258 (1993). Moreover, in some cases "the interpretation of an insurance policy depends on factual questions." Aetna Life Casualty C. v. Bulaong,218 Conn. 51, 59, 588 A.2d 138 (1991); see also Davis v. ConnecticutUnion Ins. Co., Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 39613 (February 5, 1993,Jones, J.). Absent definitive contract language, "the determination of what the parties intended their contractual commitments to encompass is a question of the intention of the parties and hence an inference of fact to be resolved by the trier of fact." Gionfriddo v. Avis Rent A Car System, Inc.,192 Conn. 280, 296, 472 A.2d 306 (1984). "[W]here the court finds that particular language in the policy is ambiguous or is susceptible of at least two fairly reasonable interpretations, CT Page 11875 this finding would present a triable issue of fact rendering summary judgment improper . . ." (Citation omitted) Piccirillov. Sawala, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 239566 (November 7, 1990, Jones, J.).
Although the defendant argues that replacement is not complete, it offers no authority or evidence in support of its position. At oral argument, the defendant appeared to base its position on its contention that in order to complete replacement, the plaintiff is required to do more that he has done to date. The defendant attempted to contest the validity of the purchase contract, but presented no evidence in support of this argument.
In response, the plaintiff contends that he has done all that is necessary to comply with the replacement provision and that "replacement has occurred." He claims that he attempted to rebuild the dwelling, and that when he was unable to do so, he complied with the provision by entering into the purchase contract to buy a substitute dwelling. This contract, which was signed of January 25, 1999, is conditioned on the plaintiff's receipt of the "insurance funds."[3] In support of his position, the plaintiff relies on the purchase contract and his affidavit, and cites to Northrop v. Allstate Ins. Co.,247 Conn. 242, 720 A.2d 879 (1998). However, although the policy at issue in Northrop is similar to the policy here, the facts of that case and the provision referred to therein are distinguishable from the facts and provision at issue in this case. Specifically, inNorthrop, the insured engaged a contractor to repair his property and the contractor had completed a portion of the repairs. The replacement provision in question limited payment to the insured to "the amount actually and necessarily spent to repair or replace the damaged building. . . ." Id., 246. The question was whether this provision precluded the plaintiff from recovering depreciation, even though the replacement work was completed, because the plaintiff had not yet spent money to pay for the replacement. The court upheld the trial court's determination that "the incurring of a valid debt, that is, becoming obligated for the completed work, was sufficient to meet this condition of the insurance policy." (Emphasis added.) Id., 249. It is important to note that in this decision, the court did not decide the issue of whether incurring a valid debt meant that the replacement was complete. In fact, the court noted that the issue of whether the replacement work was complete was "a disputed factual matter." Id. Furthermore, the court acknowledged the general validity of replacement provisions that require the insured to complete replacement before the insurer is obligated CT Page 11876 to pay withheld depreciation. Such provisions, the court recognized, may guard against the "moral hazard" of an insurer paying the replacement cost to an insured who decides not to rebuild and thus realizes a profit on a fire loss. Id., 252; see also Steiner v. Middlesex Mutual Assurance Co. 44 Conn. App. 415,432 n. 15, 689 A.2d 1154 (1997). In interpreting similar replacement provisions, some courts in other jurisdictions hold that actual replacement is a precondition to recovery,[4] while others allow recovery prior to actual replacement.[5]
The plaintiff presents an alternative argument that he attempted to comply with the conditions of the replacement provision, but compliance was impossible and thus his compliance is excused pursuant to the doctrine of impossibility. The doctrines of impossibility or impracticability of performance are recognized exceptions to the traditional rule that contracts should be enforced as written. Dills v. Enfield, 210 Conn. 705,717, 557 A.2d 517 (1989). The doctrines evolved "in recognition of the fact that certain conditions cannot be met because of unforeseen circumstances." Id. "Section 261 of the Restatement (Second) of Contracts provides: `Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the nonoccurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary.'" West Haven SoundDevelopment Corp. v. West Haven, 201 Conn. 305, 313, 514 A.2d 734
(1986).
"A party claiming that a supervening event or contingency has prevented, and thus excuses, a promised performance must demonstrate that: (1) the event made the performance impracticable; (2) the nonoccurrence of the event was a basic assumption on which the contract was made; (3) the impracticability resulted without the fault of the party seeking to be excused and (4) the party has not assumed a greater obligation than the law imposes." Dills v. Enfield, supra,210 Conn. 717. The doctrines also apply to an "existing impossibility," i.e., a situation in which the event or contingency relied upon existed at the time the contract was made. Roy v. Stephen Pontiac-Cadillac. Inc., 15 Conn. App. 101,106, 543 A.2d 775 (1988); Restatement (Second) of Contracts § 266 (1981). A party claiming existing impossibility must also show that he or she "had no reason to know at the time the contract was made of the facts on which he later relies." Restatement (Second) of Contracts § 266(1) and comment a (1981). CT Page 11877
The plaintiff focuses on the first element and argues that due to unforeseen conditions existing on his property, it was impossible for him to replace the dwelling on the same premises. However, the evidence presented by the plaintiff on this issue does not show that there is no genuine issue of material fact on the question of whether the plaintiff could replace the dwelling on the same property. He presents no evidence of a municipal agency regulation or determination that specifically prohibits him from replacing the dwelling on his property. In addition, although he states that it was not "economically feasible to bring utilities and water to the subject property," this statement is not supported by any evidence. Furthermore, "only in the most exceptional circumstances have courts concluded that a duty is discharged because additional financial burdens make performance less practical than initially contemplated." Dills v.Enfield, supra, 210 Conn. 717.
Finally, the issue which the defendant raises regarding the replacement provision is not one as to the location of the replacement, but whether replacement is complete. At oral argument, the plaintiff attempted to expand his focus to include a contention that he was unable to actually complete replacement on another property. However, the evidence does not support this contention.
Although the plaintiff appears to contend that he is entitled to recover the depreciation whether or not he attempts to replace the dwelling at another location, the cases cited in support of this contention are distinguishable. In both cases the insurers refused to pay the insureds any money under the policies. StateFarm Fire Casualty Ins. Co. v. Miceli, 164 Ill. App.3d 874,518 N.E.2d 357 (1987); and Zaitchick v. American Motorists Ins. Co.,554 F. Sup. 209 (S.D. N.Y. 1982), aff'd, 742 F.2d 1441 (2nd Cir. 1983), cert. denied, 464 U.S. 861, 104 S.Ct. 162, 78 L.Ed.2d 148
(1983) (applying New York law). In these cases, the courts applied equitable principles and determined that the insurers' conduct made it financially impossible for the insureds to comply with the provisions requiring that replacement be complete prior to recovery and that their compliance was therefore excused.State Farm Fire Casualty Ins. Co. v. Miceli, 518 N.E.2d 362;Zaitchick v. American Motorist Ins. Co., supra, 554 F. Sup. 217. In the present case, the parties agree that the defendant has already paid the plaintiff the actual cash value of his loss. Further, the plaintiff presented no evidence that the defendant's conduct made it financially impossible for him to complete CT Page 11878 replacement.
Because there is a genuine issue of material fact on the issue of whether the plaintiff's replacement of the dwelling is complete, as required by the replacement provision of the insurance policy, or whether the plaintiff was excused from complying with this provision, neither party is entitled to summary judgment on this issue.
Time Bar
The defendant also argues that the plaintiff is not entitled to recover the depreciation because he did not submit a timely claim for the depreciation as required by paragraph 8 of the Statement. The plaintiff counters that his submission of the statement constitutes his compliance with the terms of paragraph 8 therein. Paragraph 8 provides: "Supplemental Claim, to be filed in accordance with the terms and conditions of the Replacement Cost Coverage within 180 days from the date of loss as shown above [December 23, 1996], will not exceed . . . $42,092.68.* (This figure will be that portion of the amounts shown on Lines 4 [Applicable depreciation . . . $53,671.00] and 6 [Less deductibles . . . $100.00] which is recoverable) *-recoverable depreciation not to exceed policy limit of $110,000.00."
The defendant argues that the plaintiff did not file a supplemental claim until December 18, 1997, well after the 180 day period.[6] However, this contention is not supported by any evidence. Furthermore, an insured's noncompliance with a time specified for submitting a proof of loss does not automatically bar recovery. Under Connecticut case law, if, as in the present case, compliance with a time stipulated for filing a proof of loss "is not expressly made a condition precedent to liability, and no forfeiture is provided for on account of delay, beyond the time prescribed, in filing proof . . ." noncompliance does not necessarily result in forfeiture of coverage. Elberton CottonMills, Inc. v. Indemnity Ins. Co. of North America,108 Conn. 707, 713, 145 A. 33 (1929); see also Johnson v. Seaco Ins. Co., Superior Court, judicial district of Milford/Ansonia at Milford, Docket No. 52058 (March 18, 1997, Thompson, J.) (19 Conn. L. Rptr. 288, 289). Instead, as in a case in which an insured fails to give timely notice of loss, although prejudice to the insurer is presumed, "a proper balance between the interests of the insurer and the insured requires a factual inquiry into whether, in the circumstances of a particular case, an insurer has been prejudiced by its insured's delay in giving notice . . . [T]he CT Page 11879 burden of establishing lack of prejudice must be borne by the insured." Aetna Casualty Surety Co. v. Murphy, 206 Conn. 409,418-20, 538 A.2d 219 (1988); see also Johnson v. Seaco Ins. Co., supra 19 Conn. L. Rptr. 289. "The issue of whether any delay in providing a proof of loss . . . resulted in prejudice to the defendant involves a factual question which is not properly resolved in a motion for summary judgment." Id. citing to AetnaCasualty Surety Co. v. Murphy, supra, 206 Conn. 409; see alsoInternational Design Center v. Federal Ins. Co., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 279849 (July 10, 1992, Katz, J.) (7 C.S.C.R. 936). In the present case, although the defendant's receipt of the Statement raises a genuine issue of fact on the question, neither party effectively addressed the question of possible prejudice to the defendant of the plaintiff's alleged noncompliance with the 180 day provision.
For his part, the plaintiff contends that his submission of the Statement was sufficient to satisfy the requirements of paragraph 8. This contention is not supported by the evidence. In his affidavit, the plaintiff merely states that he executed the Statement. Although the defendant admits that the plaintiff submitted the Statement, there is a genuine issue of material fact on the question of whether by executing and submitting the Statement, the plaintiff complied with the requirement of paragraph 8 therein. For this reason, and because the issue of prejudice remains, neither party is entitled to summary judgment.[7]
 ORDER
For the foregoing reasons the motions for summary judgment are denied.
Clarance J. Jones