[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff law firm claims in its complaint that the defendant is in default under the terms of two revolving notes and seeks relief as a result of the default. Two collateral assignments and security agreements allegedly were executed to secure any resulting debt. The defendant has filed an answer, twelve special defenses and a counterclaim.[1] The plaintiff has moved to strike the second, fourth, eighth, ninth and twelfth special defenses on the ground that required elements of the defenses have not been pleaded. The plaintiff has also moved to strike the counterclaim.
The pleadings, together with incorporated exhibits and representations of the parties, reveal the underlying context. The plaintiff law firm was retained to represent the defendant condominium owners' association with regard to environmental difficulties. Apparently the area had been contaminated; and the Department of Environmental Protection was engaged in enforcement actions. The plaintiff law firm defended against the action by the government and instituted one or more actions against alleged actual polluters, including, it is claimed, the Hamilton Standard division of United Technologies Corporation, but those actions have thus far been entirely unavailing. The plaintiff law firm's billing has exceeded original expectations, and in order to continue on, the defendant executed notes and security interests in favor of the plaintiff. The plaintiff claims that the notes are in default, and seek relief. The gravamen of the defenses is that the conduct of the plaintiff law firm was overbearing and coercive, and for a variety of reasons the purported debt ought not be enforced by the court.
The foregoing summary, although somewhat interesting and apparently not in dispute, has little bearing on the decisions regarding the viability of the various special defenses and counterclaims, because, of course, the court in deciding motions to strike examines only the pleadings. A motion to strike tests the legal sufficiency of a pleading. Ferryman v.Groton, 212 Conn. 138, 142 (1989); Practice Book § 10-39. It admits all well pleaded facts, and the court must construe facts alleged in a pleading in the manner most favorable to the nonmoving party. Rowe v.Godou, 209 Conn. 273, 278 (1988); Gordon v. Bridgeport HousingAuthority, 208 Conn. 161, 170 (1988). If facts provable under a complaint, together with reasonable inferences drawn in a light most favorable to the nonmoving party, would support a cause of action, the motion to strike must be denied. Waters v. Autuori, 236 Conn. 820, 825-26
(1996). "The purpose of a motion to strike is to challenge the legal sufficiency of the allegations of a complaint for failure to state a claim on which relief can be granted. Practice Book § 10-39. The motion admits all facts that are well pleaded; Mingachos v. CBS, Inc.,196 Conn. 91, 108, 491 A.2d 368 (1985); but does not admit legal conclusions or the truth or accuracy of opinions. Maloney v. Conroy, CT Page 11620208 Conn. 392, 394, 545 A.2d 1059 (1988). On a motion to strike, the trial court's inquiry is to ascertain whether the allegations in each count, if proven, would state a claim on which relief could be granted. Practice Book § 10-39(a). A motion to strike is properly granted if the complaint alleges mere conclusions of law that are not supported by the facts alleged. Novametrix Medical Systems, Inc. v. BOC Group, Inc.,224 Conn. 210, 215, 618 A.2d 25 (1992)." Bennett v. Connecticut Hospice,Inc., 56 Conn. App. 134, 136-37 (1999).
I first consider the motion to strike the second special defense. This defense alleges that the parties entered into a series of written attorney-client agreements, which are set out in various exhibits. It alleges that promissory notes were executed by the defendant and, at the same time, collateral assignments of common charges and security agreements were executed. The notes were intended to constitute payment for legal services to be rendered according to the aforesaid agreements; in addition to the notes, the defendant has paid more than $200,000 for the plaintiff's legal services. The second special defense concludes with the language that "[t]he terms of the attorney-client agreement were unconscionable in that the amount and type of charges were excessive, duplicative, unethical and against public policy rendering said Entire Agreement void." (Second Special Defense, ¶ 8).
The plaintiff argues that the defense does not include facts from which the conclusion of unconscionability can reasonably be inferred. The fundamental test of unconscionability is whether the arrangement is so one-sided as to be unconscionable, in light of the general commercial background under the circumstances existing at the time. Texaco, Inc. v.Golart, 206 Conn. 454, 461-62 (1988); Cheshire Mortgage Service, Inc. v.Montes, 223 Conn. 80, 88-89 (1992). "`[T]he question of unconscionability is a matter of law to be decided by the court based on all the facts and circumstances of the case.' Iamartino v. Avallone, 2 Conn. App. 119,125, 477 A.2d 124 (1984); see Hamm v. Taylor, 180 Conn. 491, 493,429 A.2d 946 (1980). Superior bargaining power in itself is not enough to strike down a resultant contract as unconscionable. Additional elements must be present, such as, `a lack of meaningful choice as in the case of an industry wide form contract heavily weighted in favor of one party and offered on a take it or leave it basis, or [exploitation] by a stronger party who has control of the negotiations due to the weaker party's ignorance, feebleness, unsophistication as to interest rates or similar business concepts or general naivete.' Calamari Perillo, Contracts (2d Ed.) 9-40, p. 326." Fairfield Lease Corp. v. Romano's Auto Service,4 Conn. App. 495, 498-99 (1985).
Although the considerations underlying a determination of conscionability are rather broad, as may be gathered from the above CT Page 11621 authority, some specificity in pleading is nonetheless required: if a defense based on unconscionability is to survive a motion to strike, the pleader must provide some factual indication as to how the arrangement is commercially one-sided in the circumstances. The defense in this action simply recites and incorporates several of the purported agreements, and then states in conclusory language that the amounts and types of charges were excessive, duplicative, unethical and against public policy. The pleading situation is very much like that in Fairfield Lease Corp., supra, at 499:
 The counterclaim alleges that the lease was a "boiler plate agreement" and is unconscionable and unenforceable. It contains no allegations of fact as to the commercial setting in which the lease was entered or the relative bargaining power of the parties. It merely shows that the defendants entered into a lease for a coffee machine, that the lease contained a provision by which the lessee consented to jurisdiction of the courts of New York, and that the plaintiff, "upon information and belief," had obtained a default judgment against the defendant. Beyond this, its allegations are conclusions of law. Absent sufficient alleged facts to support these conclusions, the counterclaim is subject to a motion to strike. Cavallo v. Derby Savings Bank, 188 Conn. 281, 285-86, 449 A.2d 986 (1982); Sheiman v. Lafayette Bank Trust Co., supra, 46.
Again, insufficient facts have been alleged to support a finding of unconscionability. The motion to strike the second count is granted.
The plaintiff has moved to strike the fourth special defense, which alleges that, in addition to the contractual arrangements referred to above, the plaintiff was only to explore the option of initiating an action against alleged polluters, but abruptly and without written authorization commenced an action against against "numerous well-heeled corporate defendants." At the time the action was commenced, the plaintiff made little or no effort to determine the ability of the defendant to pay, what the cost of the litigation would be and whether the litigation was economically justified. Throughout the litigation the plaintiff represented and the parties assumed that the action would be settled before there was need to expend much money. The defendant never thought it would have to finance one million dollars of legal services with no return. On entering into the relationship, it is alleged, the plaintiff knew that the defendant would not be able to pay and the defendant in fact cannot perform its obligations under the notes. The CT Page 11622 defense concludes that the contractual relationship was impossible to perform.
The plaintiff claims that the defense does not contain sufficient allegations to allege the elements of impossibility of performance.
The elements of the claim of impossibility of performance are aptly summarized in Roy v. Stephen Pontiac-Cadillac, Inc., 15 Conn. App. 101,104 (1988):
 First, a contingency — something unexpected — must have occurred. Second, the risk of the unexpected occurrence must not have been allocated either by agreement or by custom. Finally, occurrence of the contingency must have rendered performance commercially impracticable. J. Calamari J. Perillo, Contracts (3d Ed.) 13-1, p. 537, quoting Transatlantic Financing Corporation v. United States, 363 F.2d 312, 315 (D.C. Cir. 1966); see also Hess v. Dumouchel Paper Co., 154 Conn. 343, 349-52, 225 A.2d 797 (1966).
Although at first blush it may seem odd that the prospect of not settling would allegedly be an entirely unexpected occurrence, it is that occurrence in combination with bills of allegedly seven figures which is the claimed unexpected occurrence. It has been alleged — though of course not proved at this point — that in the circumstances the prospect of becoming liable for a debt of a million dollars was entirely unexpected. The pleadings support the inference that the risk of the occurrence was not specifically allocated by custom or agreement. It is alleged — though not proved — that the obligation cannot be met and that insufficient effort had been made to determine the economic feasibility of the venture. The inference of commercial impracticability may be made. Although I express no opinion as to the ultimate success of the claim, I find that the allegations together with reasonable inferences drawn in favor of the pleader state a defense, and the motion to strike the fourth special defense is denied.
The plaintiff also seeks to strike the eighth special defense. This defense realleges the background contractual arrangement, and goes on to allege that at the time the notes were executed, the plaintiff "threatened" that it would cease representing the defendant "and leave the defendant exposed to liability" if the defendant did not execute the notes. In fear of the threat, the defendant executed the notes. As a result, it is claimed, the notes were signed under duress.
Duress is a defense rooted in traditional notions of contract law: if CT Page 11623 one of the parties to an agreement is motivated to appear to agree because of a fear wrongfully induced by the other, then the agreement is not a true "meeting of the minds". The elements of duress have been stated to be: (1) a wrongful act or threat (2) that left the victim no reasonable alternative, and (3) to which the victim in fact acceded and that (4) the resulting transaction was unfair to the victim. BarbaraWeisman, Trustee v. Kaspar, 233 Conn. 531, 550 n. 15 (1995). The plaintiff claims there is no allegation that the "threat" in this instance was wrongful, that the defendant had no reasonable alternative or that the resulting transaction was unfair.
I agree that the allegations of the eighth count do not include reasonable inferences, as pleaded, that the "threat" was wrongful, that there was no reasonable alternative or that the resulting transaction was unfair. An attorney may withdraw if there is no "material adverse affect on the interests of the client"; § 1.16(b) of the Practice Book, and there is no allegation that there was no reasonable alternative to continued representation by the plaintiff.[2] In any event, the motion to strike the eighth count is granted because allegations stating the elements of the defense have not been made.
The plaintiff also moves to strike the ninth count. This count realleged the contractual arrangement and alleges in addition that at the time the notes were executed the plaintiff told the defendant that the notes were needed to "fool" United Technologies into believing that the defendant had "virtually unlimited" resources and could purse the action against UTC "with impunity". The count concludes that the notes were obtained by "duress and/or fraud."
Duress is clearly not alleged, because there is no allegation of a threat, accession to the threat, and so forth. The elements of fraud are: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury. Billington v.Billington, 220 Conn. 212, 217, 595 A.2d 1377 (1991). Although the count, as framed, alleges that a representation was made, there are no allegations regarding other elements. The motion to strike the ninth count is granted.
The plaintiff also has moved to strike the twelfth count, which purports to claim a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), §§ 42-110a et seq. of the General Statutes. The count realleged a number of allegations from prior counts, including, inter alia, claims that the terms were unconscionable, the amounts of the bills were excessive, the work exceeded the scope of the agreement, work CT Page 11624 proceeded without authorization, the representation was made that the representation would not involve a lot of legal expense, a minimum hourly fee was combined with contingency billing, the objectives of the representation utterly failed, the threat was made to cease representing the defendant if it did not execute the notes, and the services violated applicable ethical requirements.
The plaintiff argues that this count fails to state a cause of action pursuant to CUTPA, because it fails to allege elements of the "cigarette rule". In order for a practice to violate CUTPA, the following criteria are used:
 (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)]. . . . Thus, a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy. (Citations omitted).
 Daddona v. Liberty Mobile Home Sales, Inc., 209 Conn. 243, 254 (1988).
The allegations, with inferences in favor of the proponent of the pleading, are sufficient to support a finding of a violation of CUTPA. The motion to strike the twelfth count is denied.
Finally, the plaintiff has moved to strike the counterclaim. The first ground is that permission was not sought to add a counterclaim after the original defenses were stricken; the second is that the counterclaim itself does not state a ground on which relief can be granted. I agree with the plaintiff insofar as it argues that "new matter" may not be inserted into a repleaded answer without following the dictates of §10-60 of the Practice Book. A counterclaim is ordinarily considered part of an answer, and adding a counterclaim has the effect of amending the answer. The motion to strike the counterclaim is, then, granted.[3]
The motion to strike is granted as to the second, eighth and ninth special defenses and the counterclaim, and is denied as to the fourth and defenses. CT Page 11625
Beach, J.